## COMMONWEALTH vs. PAUL GOMES.

Suffolk. January 6, 2009. - April 2, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Practice, Criminal,* Motion to suppress. *Threshold Police Inquiry. Search and Seizure,* Threshold police inquiry, Protective frisk, Reasonable suspicion. *Constitutional Law,* Investigatory stop, Search and seizure, Reasonable suspicion.

A trial court judge erred in denying a criminal defendant's pretrial motion to suppress evidence seized by police from his person during a patfrisk, as well as evidence subsequently found on his person at the police station, where, although the stop of the defendant was justified by specific and articulable facts supporting one officer's belief that the defendant was engaged in drug activity, the circumstances did not warrant the patfrisk of the defendant, as the police lacked particular facts from which a reasonable inference could be drawn that the defendant was armed and presented a danger to the police or others. [508-514] COWIN, J., dissenting.

INDICTMENTS found and returned in the Superior Court Department on February 9, 2006.

A pretrial motion to suppress evidence was heard by *Patrick F. Brady,* J., and the case was tried before *Elizabeth B. Donovan,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Dale Marie Merrill (Dana Alan Curhan* with her) for the defendant.

*Lynn D. Brennan,* Assistant District Attorney (*Philip B. O'Brien,* Assistant District Attorney, with her) for the Commonwealth.

*David M. Siegel,* for Suffolk Lawyers for Justice, amicus curiae, submitted a brief.

SPINA, J. The defendant was indicted by a Suffolk County grand jury on one charge of possession of a class B controlled substance (cocaine) with intent to distribute, second offense, in

violation of G. L. c. 94C, § 32A (c) and (d), and one charge of possession with intent to distribute in a school zone, in violation of G. L. c. 94C, § 32J. He filed a motion to suppress the evidence seized from his person on the grounds that he was unlawfully stopped and searched without a warrant in violation of the Fourth and Fourteenth Amendments to the United States Constitution, art. 14 of the Massachusetts Declaration of Rights, and G. L. c. 276.[1] After an evidentiary hearing, a judge in the Superior Court denied the motion. Following a jury trial, the defendant was convicted on both indictments. He appealed, and we transferred the case from the Appeals Court on our own motion. The defendant claims, among other issues that we need not reach, that his motion to suppress should have been allowed because the police seized him without reasonable suspicion of criminal activity and pat frisked him without reason to believe that he was armed and dangerous. For the reasons that follow, we now reverse.[2]

We summarize the facts as found by the motion judge, supplemented by uncontested testimony from the suppression hearing. See *Commonwealth* v. *DePeiza*, 449 Mass. 367, 368 (2007). We do not rely on any facts subsequently developed at trial. See *Commonwealth* v. *Deramo*, 436 Mass. 40, 43 (2002).

On December 17, 2005, at around 4 A.M., Boston police Officer Greg Walsh was on patrol in a marked cruiser in the vicinity of Tremont and Stuart Streets in downtown Boston. He was familiar with the area as one where he had made several hundred arrests for drug-related offenses and where there had been numerous shootings, including several involving police officers. On this night, Officer Walsh was working with two

---

[1]The Fourth Amendment to the United States Constitution provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Article 14 of the Massachusetts Declaration of Rights requires that all warrants be "previously supported by oath or affirmation" and "accompanied with a special designation of the persons or objects of search, arrest, or seizure." General Laws c. 276, § 2, states that "[s]earch warrants shall designate and describe the building, house, place, vessel or vehicle to be searched and shall particularly describe the property or articles to be searched for."

[2]We acknowledge the amicus brief filed by Suffolk Lawyers for Justice, Inc.

other members of the drug control unit, Detective Guy and Officer Hynes, who were together in another marked cruiser. The three officers, all of whom were in uniform, were driving slowly and watching for possible illicit activities.

At the intersection of Tremont and Stuart Streets, in the heart of the theater district, the police cruisers made a left turn onto Stuart Street, traveling for a short distance on the wrong side of the road. The defendant and Dennis Bates were standing together in the doorway of a building at 71 Stuart Street. Officer Walsh was familiar with the defendant because his booking photograph was posted on a bulletin board in the police station, identifying him as an "impact player" in the Grove Hall area of the Dorchester section of Boston.[3] The photograph included information about the defendant's arrest on July 12, 2004, for possession of a controlled substance with intent to distribute.

Officer Walsh observed the defendant and Bates engaging in what appeared to be a drug transaction. The defendant was standing in the doorway with his right hand opened flat as if displaying some object or items to Bates, which Officer Walsh could not see. The police cruisers stopped, the officers left their vehicles, and they started to approach the defendant. As they did so, Officer Walsh saw the defendant put his right hand up to his mouth and appear to swallow something. Officer Walsh asked the defendant what he was doing there, and he immediately conducted a patfrisk for weapons. While the defendant was being patted down, a clear plastic bag containing five individually packaged rocks of "crack" cocaine slid out of his pant leg and onto the ground. Officer Walsh arrested the defendant and transported him to the police station for booking. Bates was also pat frisked, checked for outstanding warrants, and then released. During a more thorough search of the defendant at the police station, officers found additional evidence that was indicative of drug dealing.[4]

When reviewing the denial of a suppression motion, "we

---

[3]According to Officer Walsh's testimony at the suppression hearing, the defendant's designation as an "impact player" arose from his multiple prior arrests on drug charges and resulted in the posting of his booking photograph on a bulletin board in the police station so that officers could familiarize themselves with the defendant.

[4]The motion judge did not discuss in further detail the events in the police

accept the judge's subsidiary findings of fact absent clear error, but conduct an independent review of the judge's ultimate findings and conclusions of law." *Commonwealth* v. *Washington*, 449 Mass. 476, 480 (2007). "[O]ur duty is to make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found." *Commonwealth* v. *Mercado*, 422 Mass. 367, 369 (1996). We defer to the motion judge regarding the weight and credibility of the testimony presented at the suppression hearing. See *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990), and cases cited. The Commonwealth bears the burden of demonstrating that the actions of the police officers in stopping and frisking the defendant were within constitutional limits. See *Commonwealth* v. *De-Peiza*, *supra* at 369.

The defendant contends that his motion to suppress should have been allowed because Officer Walsh's observation of one person holding out his hand to display an unidentified object to another person does not provide the police with the requisite reasonable suspicion of criminal activity to justify a threshold inquiry under *Terry* v. *Ohio*, 392 U.S. 1, 21-22 (1968). The defendant points out that the police did not observe anything exchanged between the two men and did not see the object that the defendant was holding. Further, he continues, the officers' generalized references to guns in the city, without any nexus to the defendant, did not give rise to reasonable concerns for their safety that would justify a patfrisk. Consequently, the defendant claims that the cocaine found at the scene should have been suppressed, as should the cocaine found on his person at the police station because it was "fruit of the poisonous tree."

"In 'stop and frisk' cases our inquiry is two-fold: first, whether the initiation of the investigation by the police was permissible in the circumstances, and, second, whether the scope of the search was justified by the circumstances." *Commonwealth* v. *Wilson*, 441 Mass. 390, 393-394 (2004), quoting *Commonwealth* v. *Silva*, 366 Mass. 402, 405 (1974). Both inquiries relate to the reasonableness of the police officer's conduct under the Fourth

station, pointing out that defense counsel had not requested the suppression of the additional evidence as long as the original patfrisk was lawful.

Amendment and art. 14. See *Commonwealth* v. *Wilson, supra* at 394; *Commonwealth* v. *Torres*, 433 Mass. 669, 672 (2001).

Before considering whether the officers' actions in stopping the defendant were constitutionally permissible, we first identify the moment when the seizure occurred. Not every encounter between a law enforcement official and a member of the public constitutes an intrusion of constitutional dimensions that requires justification. See *Commonwealth* v. *Stoute*, 422 Mass. 782, 789 (1996). A person is seized by the police only when, in light of the surrounding circumstances, a reasonable person in the situation would not feel free to leave. See *id.* at 786 (adopting "free to leave" standard of *United States* v. *Mendenhall*, 446 U.S. 544, 554 [1980], for purposes of art. 14). See also *California* v. *Hodari D.*, 499 U.S. 621, 624-626 (1991) (stop occurs for Fourth Amendment purposes when police apply physical force or make show of authority to which subject yields).

Here, contrary to the defendant's contention, he was not seized when the police got out of their vehicles and quickly approached him while he was standing in the doorway of 71 Stuart Street. See *Commonwealth* v. *DePeiza, supra* at 370 (no seizure where police stepped out of unmarked vehicle, approached defendant, engaged in short conversation, and accepted his identification when voluntarily offered); *Commonwealth* v. *Pagan*, 63 Mass. App. Ct. 780, 782 (2005) ("police officers did not impinge on the defendant's rights by simply alighting from the police cruiser and approaching him"). There was no evidence that the police had activated their blue lights, see *Commonwealth* v. *Smigliano*, 427 Mass. 490, 491-492 (1998), and the mere presence of three police officers was not overwhelming, see *Commonwealth* v. *Pimentel*, 27 Mass. App. Ct. 557, 561 (1989). The defendant was seized when, immediately after asking the defendant what he was doing, Officer Walsh conducted a patfrisk. At that moment, a reasonable person would have believed that he was not free to leave. See *Commonwealth* v. *DePeiza, supra* at 371; *Commonwealth* v. *Barros*, 435 Mass. 171, 174-176 (2001).

Having determined that the defendant was stopped in the constitutional sense, we consider whether the actions of the officers were justified in the circumstances. A police officer may make an investigatory stop "where suspicious conduct gives the officer

reasonable ground to suspect that a person is committing, has committed, or is about to commit a crime." *Commonwealth* v. *Wilson, supra.* The actions of the officer "must be based on specific and articulable facts and reasonable inferences therefrom, in light of the officer's experience." *Id.* We view the "facts and inferences underlying the officer's suspicion . . . as a whole when assessing the reasonableness of his acts." *Commonwealth* v. *Thibeau,* 384 Mass. 762, 764 (1981). "Seemingly innocent activities taken together can give rise to reasonable suspicion justifying a threshold inquiry." *Commonwealth* v. *Watson,* 430 Mass. 725, 729 (2000). However, reasonable suspicion may not be based merely on good faith or a hunch. See *Commonwealth* v. *Grandison,* 433 Mass. 135, 139 (2001).

We agree with the Commonwealth that the motion judge correctly determined that specific and articulable facts supported Officer Walsh's belief that the defendant was engaged in drug activity. Officer Walsh had significant experience with the drug control unit in downtown Boston, conducting well over 1,000 investigations and making several hundred arrests. See *Commonwealth* v. *DePeiza, supra* at 373 (police may rely on experience and training as basis for reasonable suspicion). The neighborhood where the police were patrolling was a high crime area, and it was around 4 A.M. when the events at issue transpired. See *Commonwealth* v. *Thompson,* 427 Mass. 729, 734, cert. denied, 525 U.S. 1008 (1998) (presence in high crime area is one factor that, in combination with others, may contribute to reasonable suspicion of criminal activity). Officer Walsh was familiar with the defendant as an individual who previously had been arrested on drug charges. See *Commonwealth* v. *Ciaramitaro,* 26 Mass. App. Ct. 110, 115 (1988) (police knowledge of defendants' involvement in past drug activities is factor for consideration in justifying stop). The police observed the defendant displaying items in his hand to Bates and then appearing to swallow those items as the officers approached. That there may be an innocent explanation for the defendant's actions "does not remove [those actions] from consideration in the reasonable suspicion analysis." *Commonwealth* v. *DePeiza, supra.* See *Commonwealth* v. *Kennedy,* 426 Mass. 703, 710-711 (1998) (even though officer did not see what was exchanged, officer's training, education, and knowledge

supported reasonable suspicion of drug transaction). Further, Officer Walsh testified that, based on his observations as a police officer, drug dealers and users often ingested drugs to prevent the recovery of evidence. See *Commonwealth* v. *Rivera*, 27 Mass. App. Ct. 41, 43-44 (1989) (officer's observation of person attempting to conceal suspected contraband from police view may justify arrest and search). When the facts and inferences underlying Officer Walsh's suspicions are viewed in their totality, they constitute more than a mere hunch. We conclude that the seizure of the defendant was a proper investigatory stop based on reasonable suspicion of illegal conduct.

Proceeding to the next step of our analysis, we consider whether the scope of the search was justified by the circumstances. "[A] *Terry*-type patfrisk incident to the investigatory stop is permissible where the police officer reasonably believes that the individual is armed and dangerous." *Commonwealth* v. *Wilson, supra.* See *Terry* v. *Ohio*, 392 U.S. 1, 23-25 (1968). See also *Commonwealth* v. *Mercado*, 422 Mass. 367, 371-372 (1996). "While the officer need not be absolutely certain that the individual is armed, the basis for his acts must lie in a reasonable belief that his safety or that of others is at stake." *Commonwealth* v. *Silva*, 366 Mass. 402, 406 (1974). As with the initial stop, the officer's action "must be based on specific and articulable facts and reasonable inferences therefrom, in light of the officer's experience." *Commonwealth* v. *Wilson, supra.* We caution that while the character of a neighborhood as a "high crime area" can be considered as part of the aggregate circumstances that provide reasonable suspicion to justify a protective frisk, see *Commonwealth* v. *Fisher*, 54 Mass. App. Ct. 41, 45 (2002), "this factor must be considered with some caution because many honest, law-abiding citizens live and work in high-crime areas. Those citizens are entitled to the protections of the Federal and State Constitutions, despite the character of the area." *Commonwealth* v. *Holley*, 52 Mass. App. Ct. 659, 663 (2001).

Here, we conclude that the police lacked particular facts from which a reasonable inference could be drawn that the defendant was armed and presented a danger to the officers or others. There was no evidence that the defendant's criminal history included any weapons-related offenses. See *Commonwealth* v.

*Dasilva*, 66 Mass. App. Ct. 556, 561 (2006) (officers' knowledge that defendant already charged with crimes involving firearms could be considered in reasonable suspicion analysis); *Commonwealth* v. *Hooker*, 52 Mass. App. Ct. 683, 687 (2001) (knowledge of defendant's prior arrests that did not involve firearms or other weapons was insufficient to create reasonable apprehension of danger to police). Officer Walsh gave no testimony that the police observed anything suggesting that the defendant had a weapon. There was no evidence that the defendant made particular gestures or used any body language that would cause the officers to believe that he was carrying a weapon. Cf. *Commonwealth* v. *DePeiza, supra* at 371 (defendant's walking with right arm held stiff and straight against body suggested he was carrying concealed weapon). Further, there was no evidence that the defendant attempted to flee from the officers when they approached his location. Although the incident at issue occurred around 4 A.M. in a high crime area, Officer Walsh was not alone or outnumbered during his interaction with the defendant where he was accompanied by two other officers, all in uniform, and the defendant's only companion was Bates. See *Commonwealth* v. *Sumerlin*, 393 Mass. 127, 131 (1984), cert. denied, 469 U.S. 1193 (1985) (threat of danger increases where suspects outnumber officers).

Officer Walsh's general testimony that "[t]here have been shootings downtown," that "[t]here have been numerous incidents of firearms," and that he was "familiar with at least four police officer involved shootings in the area," without more particular facts relating to this defendant and to when those other shootings had occurred, did not give the police the necessary reasonable suspicion to conduct a protective frisk. See generally *Commonwealth* v. *Silva, supra* at 408-410 (purpose of *Terry*-type search is not search for evidence of crime, but protective search for weapons). Contrast *Commonwealth* v. *Fisher, supra* at 43-44 (two officers patrolling "high crime area" where "firearm offenses were common" properly conducted protective frisk of individual who, on seeing police, "did a U-turn" and walked away quickly, and who, when police approached to inquire further, made "quick movement into his waist area"). In the circumstances

here, the degree of police intrusion was not proportionate to the articulable risk to officer safety and, therefore, was constitutionally impermissible. Because the discovery of the cocaine that slid out of the defendant's pant leg at the scene was the direct result of an unlawful patfrisk, the cocaine subsequently found on his person at the police station, during a search incident to his arrest, must also be suppressed under the "fruit of the poisonous tree" doctrine. See *Wong Sun* v. *United States*, 371 U.S. 471, 487-488 (1963); *Commonwealth* v. *Damiano*, 444 Mass. 444, 453-454 (2005).[5]

The order denying the motion to suppress is reversed. This case is remanded to the Superior Court for further proceedings in accordance with this opinion.

*So ordered.*

Cowin, J. (dissenting). I respectfully dissent from the court's conclusion that "the degree of police intrusion [the patfrisk] was not proportionate to the articulable risk to officer safety and, therefore, was constitutionally impermissible." *Ante* at 513-514. On the contrary, I believe that there were "particular facts from which a reasonable inference could be drawn that the defendant was armed and presented a danger to the officers or others." *Ante* at 512. The court's conclusion ignores reality and fails to take into account all the circumstances that were present at the time of the challenged patfrisk.

I recognize that we do not necessarily consider a suspect to be armed simply because the suspect is engaged in drug activity. See *Commonwealth* v. *Washington*, 449 Mass. 476, 482-483 (2007) ("[w]hile drug involvement certainly may be a relevant factor in assessment of threats to police safety, we are reluctant to adopt a blanket rule that all persons suspected of drug activity are to be presumed armed and dangerous for constitutional purposes"). Cf. *Commonwealth* v. *Rodriguez*, 415 Mass. 447,

---

[5]Given our resolution of the suppression issue, which is dispositive of the defendant's appeal, we need not consider the other issues raised in his brief.

450 (1993) (fact that drugs are involved is not alone sufficient to give rise to probable cause to believe that police knocking and announcing their presence would endanger officer safety or lead to destruction of evidence).

I continue to support that position, but I do not agree with the manner in which the court has applied the law to the facts of this particular case. That the defendant was a suspected drug dealer cannot be viewed in isolation. As the court recognizes, the defendant was known by one of the officers, and recognized by the police department, as an "impact player" in the local illicit drug market. He was engaged in a transaction at 4 A.M. in a high crime area where there had been numerous shootings, several of which involved law enforcement officers. In these circumstances, the defendant might well be wary of being victimized by other criminals or of being confronted by the police.[1]

It was reasonable to believe, therefore, that the defendant was carrying on his person either his inventory or the cash proceeds of prior drug sales (or both), and could be easy prey for other drug dealers, drug users, or assailants. That he was armed to protect himself in such a situation, either from others similarly engaged in criminal conduct or from the police, is not only reasonable but probable. See *Commonwealth* v. *Hines*, 449 Mass. 183, 189 (2007) ("[d]rug offenses frequently involve drug dealers being armed and . . . in many cases, shootings and killings occur when a drug dealer is confronted by police, when a drug deal goes 'bad,' or when others try to steal the drugs"). See, to the same effect, *Commonwealth* v. *Cannon*, 449 Mass. 462, 470-471 (2007). In my view, the court's reasoning does not adequately address the significance of these additional facts, which create a reasonable concern for the officers' safety or the safety of others. Once the court concludes, as it does, that it was reasonable to believe that the defendant was selling drugs at 4 A.M. in a high crime area, *ante* at 511-512, it is also reasonable to believe that the defendant could be armed.

The court's statement that the neighborhood's reputation as a "high crime area" is a factor that "must be considered with

---

[1] I acknowledge that the police officers outnumbered the suspects. *Ante* at 513. That, however, is only one factor in the safety analysis, and the police should not be required to take the risk that suspects will act irrationally.

some caution" is inapplicable on these facts. *Ante* at 512, quoting *Commonwealth* v. *Holley*, 52 Mass. App. Ct. 659, 663 (2001). The court agrees with the Commonwealth that there were "specific and articulable facts support[ing] [the officer's] belief that the defendant was engaged in drug activity." *Ante* at 511. By definition, therefore, we are not dealing with an innocent person who happens to live in a high crime area.

It is unreasonable to subject law enforcement officers to the risk of attack in the present circumstances. See *Commonwealth* v. *Almeida*, 373 Mass. 266, 271 (1977), quoting *Terry* v. *Ohio*, 392 U.S. 1, 33 (1968) (Harlan, J., concurring) (in considering reasonableness of police conduct, "it [is] crucial to remember as shown by many tragic climaxes to threshold police inquiries, 'the answer might be a bullet' "). Accordingly, I would conclude that the scope of the search was justified by the circumstances and affirm the denial of the motion to suppress.