COMMONWEALTH *vs.* CARLOS VAZQUEZ. No. 08-P-1628. August 5, 2009. *Practice, Criminal,* Motion to suppress. *Threshold Police Inquiry. Search and Seizure,* Threshold police inquiry, Reasonable suspicion. *Joint Enterprise. Evidence,* Joint venturer.

Only minutes after a violent assault, a police officer learned that the defendant,

---

[4]Stewart's request for appellate attorney's fees and costs is denied.

while watching the victim being severely beaten, whistled and shouted to the assailant to stop when a bystander approached. The motion judge, finding that this information dispelled reasonable suspicion that the defendant was involved in the assault, granted the defendant's motion to suppress.[1] The Commonwealth appeals. We reverse.

*Facts.* We summarize the facts found by the judge at the hearing on the motion to suppress, which we have supplemented with other uncontested testimony from that hearing. See *Commonwealth* v. *Gomes*, 453 Mass. 506, 507 (2009).

Shortly after midnight on April 21, 2007, Lawrence police Officers Carl Trombly and Robert Michaud responded within twenty to thirty seconds to a call reporting "a man being jumped" at the corner of Jackson and Oak Streets. As they approached the intersection in a marked cruiser, a man on a cellular telephone, Cesar Lebron, flagged them down and pointed north on Jackson Street stating, "There he is, the one with the sports jersey. That's him." The police continued in their cruiser down Jackson Street in the direction that Lebron indicated.

About two blocks north on Jackson Street, Officer Trombly observed the defendant, Carlos Vazquez, in a sports jersey walking north. He recognized the defendant from a party the officers had broken up about an hour earlier, wherein six or seven other people had been arrested. The officers pulled up alongside the defendant and stepped out of the cruiser. Officer Trombly approached the defendant and asked him about a fight on Jackson and Oak. The defendant replied that he had "witnessed" and "watched" a fight. During this exchange, the defendant put his hand in his right front pocket, and Officer Trombly asked him to remove it. The defendant complied.

During this same time, Officer Chad Lawlor arrived at the corner of Jackson and Oak Streets and saw the victim lying on the ground, seriously injured. He immediately radioed for an ambulance and advanced life support. Hearing this request over his own radio, Officer Trombly became aware that the victim had been severely injured.

While Officer Trombly continued to question him, the defendant repeatedly looked over to the front door of the nearby Lawrence Country Club bar (LCC). The officer found this suspicious because no one was at the front door of the LCC and because the defendant could not focus on the officer's questions. Based on his experience, Officer Trombly believed the defendant may have been looking for an escape route or for someone else to join him. The defendant also reached into his right front pocket two or three more times despite being instructed not to do so. Officer Trombly became concerned for his safety. He ordered the defendant to put his hands on the cruiser and asked him what was in his pocket, to which the defendant replied, "My chain." He then patted down the defendant and felt the chain, which he did not remove because he knew it was not a weapon.

During this patfrisk, the defendant became argumentative and stood upright, taking his hands off the cruiser. Officer Trombly, becoming more concerned for his safety, handcuffed the defendant and transported him back to the corner of Jackson and Oak Streets in his cruiser.

---

[1]The defendant was charged with assault and battery by means of a dangerous weapon causing serious bodily injury, G. L. c. 265, § 15A(c), the victim being age sixty or over, G. L. c. 265, § 15A(a), and unarmed robbery of a victim age sixty or over. G. L. c. 265, § 19(a).

Up to this point, the motion judge found, and the defendant concedes, that the actions of the officer were permissible. What occurred next leads us to the crux of the matter.

Officer Trombly again spoke with Lebron, who said that he had come upon a white, bald man kicking the victim in the head as the victim lay on the ground. Lebron stated that when he (Lebron) started walking toward the assailant, the defendant looked at him, then to the assailant. The defendant then whistled to the assailant and told him to stop. When Lebron came closer, the assailant fled north on Jackson Street. The defendant also started to walk up Jackson Street at that point, in the same direction as the assailant.

With this information, Officer Trombly returned to the LCC to locate the assailant.[2] There, a second witness, John Smoley, told him that the defendant and a white male had earlier followed an individual from the LCC toward the intersection of Jackson and Oak (where the beating occurred).

After Officer Trombly gained this information, the defendant was placed under arrest and driven to the police station by Officer Lawlor. On the way, the defendant asked why he was arrested, and Officer Lawlor replied that the arresting officers would speak to him at the station. The defendant then said that he was robbed and "[m]y boy got my chain back." Officer Lawlor asked who his boy was, and the defendant replied, "I'm not going to say. I'll go upstate before I give his name." At the station, the defendant was booked, and a chain belonging to the victim was taken from his pocket.

The defendant successfully moved to suppress the chain and the statements made to Officer Lawlor. The motion judge found that while the initial detention of the defendant was lawful, reasonable suspicion dissipated when Officer Trombly heard Lebron's account of the facts. Without more, the judge reasoned, Officer Trombly could only have concluded that one man committed the crimes and was therefore required to release the defendant immediately. Consequently, the judge found the defendant's continued detention unlawful and suppressed the chain and the statements the defendant made following his arrest.[3]

On appeal, the Commonwealth challenges the judge's determination that reasonable suspicion dissipated after the officer spoke with Lebron.[4] We reverse.

*Discussion.* On review, we accept the judge's findings of fact absent clear error and make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found. *Commonwealth* v. *Gomes*, 453 Mass. at 508-509.

---

[2]The motion judge found that Officer Trombly drove to the LCC with the defendant still seated in the back of the cruiser. Both parties concede that this finding lacks record support. Officers Trombly and Lawlor both testified without contradiction that the defendant was transferred to Officer Lawlor's cruiser and remained at the intersection of Jackson and Oak while Officer Trombly went to the LCC with Officer Michaud. The discrepancy is of little import.

[3]The judge also found that the information provided by Smoley at the LCC did not enhance the situation, and thus, there was no probable cause for the arrest. The judge stated that this additional information "was just that the defendant and another individual followed a third individual down the street." The judge provided no further reasoning.

[4]The Commonwealth does not contest the suppression of the second statement the defendant made to Officer Lawlor ("I'm not going to say. I'll go upstate before I give his name").

A police officer may detain someone during an investigation provided there is reasonable ground to suspect that the person has committed a crime. See *Commonwealth* v. *Phillips*, 452 Mass. 617, 626-627 (2008); *Commonwealth* v. *Gomes*, 453 Mass. at 510-511. Reasonable suspicion must be based on specific and articulable facts and reasonable inferences that follow from the officer's experience. See *Commonwealth* v. *Silva*, 366 Mass. 402, 406 (1974); *Commonwealth* v. *Grandison*, 433 Mass. 135, 139 (2001); *Commonwealth* v. *Isaiah I.*, 450 Mass. 818, 823 (2008). During an investigation, unfolding events are often interconnected and dynamic, requiring facts to be considered in totality when determining reasonable suspicion. See *Commonwealth* v. *Thibeau*, 384 Mass. 762, 763-764 (1981); *Commonwealth* v. *Fletcher*, 52 Mass. App. Ct. 166, 171 (2001). See also *Commonwealth* v. *Gomes*, 453 Mass. at 511, quoting from *Commonwealth* v. *Watson*, 430 Mass. 725, 729 (2000) ("Seemingly innocent activities taken together can give rise to reasonable suspicion justifying a threshold inquiry").

Officers do not have to rule out all innocent explanations for the observations made before taking action, *Commonwealth* v. *Isaiah I.*, 450 Mass. at 823, and reasonable suspicion can develop while the specifics of the criminal activity remain unknown. See *Commonwealth* v. *Feyenord*, 445 Mass. 72, 80 (2005), cert. denied, 546 U.S. 1187 (2006) ("Although the facts supported the trooper's suspicion that criminal activity was 'afoot,' *Terry* v. *Ohio*, 392 U.S. 1, 30 [1968], the specific type . . . was decidedly uncertain"). In a "swiftly developing situation," courts are discouraged from second guessing the detention of a suspect provided it was reasonable to confirm or dispel the officer's suspicion. *Commonwealth* v. *Sinforoso*, 434 Mass. 320, 325 (2001), quoting from *United States* v. *Sharpe*, 470 U.S. 675, 686 (1985).

Here, the motion judge was correct in his assessment that the defendant did not actively participate in the victim's beating. It seems to us, however, that the actions of the defendant were consistent with his being a lookout, thus making him a joint venturer,[5] permitting the police not only to detain him but to arrest him as well. See *Commonwealth* v. *Gonzalez*, 452 Mass. 142, 149 (2008); *Commonwealth* v. *Phillips*, 452 Mass. at 626-627.

Lebron pointed to "the one with the sports jersey," which matched the description of the defendant. During their initial encounter, the defendant told Officer Trombly that he was present during the assault. While Officer Trombly questioned him, the defendant kept looking towards the LCC (the direction of the assailant's flight), and became argumentative when Officer Trombly patted him down. Though the defendant claimed ownership of the chain, he did not wear it, but instead kept it in his pocket.

Further, from Lebron's account, the defendant's actions during the assault mirrored those of a classic lookout. Once the defendant became aware that Lebron was watching, he whistled and called to the assailant to stop. See *Commonwealth* v. *Miranda*, 441 Mass. 783, 792 (2004) (defendant participated as lookout in drug deal by looking up and down street during transaction and directing seller to "hurry up"); *Commonwealth* v. *Pringle*, 22 Mass. App. Ct.

---

[5]Joint venture requires proof that one is (1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or intending himself to commit the crime, and (3) by agreement, willing and available to help the other if necessary. *Commonwealth* v. *Gonzalez*, 452 Mass. 142, 149 (2008).

746, 750 (1986). The defendant's prompt departure in lieu of attending to the victim more closely resembled a participant in a crime than a concerned bystander. Cf. *Commonwealth* v. *Fuentes*, 45 Mass. App. Ct. 934, 936 (1998) (upholding defendant's arson conviction based on joint venture and noting "[e]ven though it may be a natural reaction for a person to flee when he or she sees a sudden fire in a building, the mere fact that there are two plausible explanations for why a defendant fled a crime scene does not mean that a jury is forbidden from finding that the flight was probative of guilt"). The defendant also departed in the same direction as the assailant.

After speaking with Lebron, reasonable suspicion, far from being dissipated, ripened into probable cause to arrest. See *Commonwealth* v. *Mendes*, 46 Mass. App. Ct. 581, 589-590 (1999) (probable cause to believe that defendant was acting as lookout justified his arrest). Contrast *Commonwealth* v. *Torres*, 424 Mass. 153, 163 (1997) (reasonable suspicion justifying police inquiry following routine traffic stop dispelled once valid license and registration produced); *Commonwealth* v. *DeJesus*, 72 Mass. App. Ct. 117, 120 (2008) (though 911 tip described "kid" with gun, officers' observations upon arrival dispelled any belief that defendant was minor). That the police decided to conduct some brief further investigation by going to the LCC prior to formally arresting the defendant only bolstered the case for probable cause.

*Order allowing motion to suppress reversed.*

*Kenneth E. Steinfield*, Assistant District Attorney, for the Commonwealth.

*Barry Auskern* for the defendant.