SUPERIOR COURT 
 
 COMMONWEALTH vs. RAINER MORA-POLANCO

 
 Docket:
 SUPERIOR COURT CRIMINAL ACTION DOCKET NO: 2181CR0033
 
 
 Dates:
 January 4, 2023
 
 
 Present:
 David A. Deakin Associate Justice
 
 
 County:
 MIDDLESEX, ss.
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON DEFENDANT’S MOTION TO RECONSIDER THE DENIAL OF DEFENDANT’S MOTION TO SUPPRESS EVIDENCE
 
 

             The defendant, Rainer Mora Polanco,[1] is charged with one count of trafficking at least thirty-six and fewer than one hundred grams of cocaine. In November 2021, Mora Polanco filed a Motion to Suppress Evidence (“Motion to Suppress,” Paper No. 12), seeking to suppress evidence collected when police patfrisked him and then conducted a partial strip search. After a hearing on the motion in July 2022, I issued a decision the following month denying the Motion to Suppress. See Paper No. 18. Mora Polanco subsequently filed a Motion to Reconsider the Denial of Defendant’s Motion to Suppress Evidence (“Motion to Reconsider,” Paper No. 22), and the Commonwealth filed an opposition. See Paper No. 23, Opposition to Defendant’s Motion to Reconsider the Denial of the Defendant’s Motions to Suppress Evidence. Because, upon reconsideration, I conclude that the patfrisk of Mora Polanco that the police conducted was not justified by any information specific to Polanco suggesting that he was armed, the Motion to Reconsider is ALLOWED. The Motion to Suppress, which was denied initially, is, therefore, also ALLOWED.
 
--------------------------------------------------------------
 
[1] The defendant was indicted under the name Rainer Mora-Polanco. For that reason, I have captioned the decision using that spelling. In his pleadings, however, the defendant refers to himself as Rainer Mora Polanco. For the purposes of this motion only, therefore, I have adopted that spelling.
 
                                                            -1-
 
FACTS
            The facts upon which the original decision rested, and upon which my reconsideration of that decision is also based, are set out in my original Memorandum and Order on Defendant’s Motion to Suppress Evidence (“original decision,” Paper No. 18). They were taken from the testimony of Sergeant Jason Burd and Detective David Kew, both of the Lowell Police Department, whose testimony I credited fully, and are set out in the indented paragraphs below.
The defendant, Rainer Mora-Polanco, is charged with one count of trafficking at least thirty-six and fewer than one hundred grams of cocaine. The charge grows out of his arrest on March 14, 2020, at 89 Temple Street in Lowell. That evening, he is alleged to have been delivering drugs to a confidential source (“Source”) who, unbeknownst to Mora-Polanco was cooperating with law enforcement officials from the Lowell Police Department. During the execution of a search warrant at the Source’s residence at 89 Temple Street earlier in the day, the Source agreed to order two ounces of cocaine from an individual identified only as “Jose,” a reputed drug dealer who had supplied the Source with drugs for roughly a decade. The indictment alleges that Mora-Polanco was delivering the drugs to the Source at Jose’s direction.
When he arrived at the apartment on Temple Street, Mora-Polanco allegedly knocked twice and then – no one having answered – let himself into the front entryway. There, he was unexpectedly met by a group of plainclothes Lowell Police Department officers. They identified themselves, and then Detective David Kew pat-frisked Mora-Polanco. As Detective Kew was doing so, he felt what he believed, based on his training and experience, to be a package of cocaine. It was resting against Mora-Polanco’s pubis, just above his genitals. Detective Kew then took Mora-Polanco further back into the entryway – to an area of the entryway visible neither from the street nor from the entrances to the two apartment that shared it. There, he pulled out the waistbands of Mora-Polanco’s elasticized sweatpants and underwear. As he did so, Detective Kew could see a glassine bag containing a white powdery substance that he believed to be cocaine. Kew, who was wearing gloves throughout the search, grabbed the bag without contacting Mora-Polanco’s genitals. Subsequent testing revealed that it contained 56.28 grams (1.985 ounces) of cocaine.
Mora-Polanco was then arrested and searched. Police recovered two iPhone cellular telephones, driver’s licenses in Mora-Polanco’s name
 
                                                            -2-
 
from Maryland and the Dominican Republic, and a set of keys. Police used one of those keys to open Mora-Polanco’s Honda Accord, which he had parked across the street from 89 Temple Street. In it, police found $2,000 in loose currency of various denominations.
PROCEDURAL HISTORY
            The grand jury returned this indictment on January 29, 2021, and the defendant was arraigned in this court on March 1, 2021. On November 30, 2021, the defendant filed a Motion to Suppress Evidence (“Motion,” Paper No. 12). The Commonwealth filed a Memorandum in Opposition to the Defendant’s Motion to Suppress (“Opposition,” Paper No. 15) on July 26, 2022, and I held a hearing on the Motion that day and took it under advisement. At the hearing, defense counsel presented an oral argument but requested leave to file a subsequent memorandum of law, which I granted. I received the defendant’s Memorandum in Support of Motion to Suppress Evidence (“Memorandum,” Paper No. 12.2) on August 5, 2022, and the Commonwealth’s Supplemental Memorandum in Opposition to the Defendant’s Motion to Suppress (“Supplemental Opposition,” Paper No. 16) on August 12, 2022. I issued my original decision, denying the defendant’s Motion to Suppress, on August 30, 2022. On October 18, 2022, Mora Polanco filed this Motion to Reconsider, and the Commonwealth filed its opposition on November 8, 2022.
ANALYSIS
            A motion for reconsideration is left to the motion judge’s discretion. Audubon Hill South Condo. Ass’n v. Comty. Ass’n Underwriters of Am., Inc., 82 Mass. App. Ct. 461, 470 (2012). In deciding such a motion, the court considers whether the party seeking reconsideration has specified either “changed circumstances,” such as newly discovered evidence or information or a development of relevant law, or a particular and demonstrable error in the original ruling or decision. Id. (citations omitted). In his Motion to Reconsider, Mora Polanco alleges neither the emergence of newly discovered evidence nor a development in the law. Rather, he argues that there was a demonstrable error in the original ruling. Specifically, he argues that I erred in the original decision in
 
                                                            -3-
 
concluding that: (1) police had reasonable suspicion to stop Mora Polanco when he arrived at the residence, allegedly to deliver cocaine; (2) police had a basis to conclude that he was armed, justifying a patfrisk of his person; (3) the ensuing strip search to recover what police believed was cocaine concealed in Mora Polanco’s groin area was conducted impermissibly; and (4) the ensuing search of Mora Polanco’s automobile was impermissible as the fruit of the unlawful search of his person.
            My review of the Motion to Reconsider convinces me that Mora Polanco’s first, third, and fourth arguments for reconsideration are unpersuasive. I am, however, persuaded by his second argument – that the patfrisk that police conducted immediately upon encountering Mora Polanco in the hallway of the building where they reasonably believe he had come to deliver a substantial amount of cocaine was not justified by any specific reason to believe that he was armed. It is for that reason that I must allow the motion to reconsider.
            I note initially that it was not until the Motion to Reconsider that Mora Polanco’s counsel cited the authority that persuades me that my initial decision as to the lawfulness of the patfrisk was error.[2] Upon reviewing those cases, however, I conclude that reconsideration of my initial decision regarding the lawfulness of the patfrisk is required.
            A patfrisk pursuant to Terry v. Ohio, 392 U.S. 1 (1968) “is permissible where the police officer reasonably believes that the individual is armed and dangerous.” Commonwealth v. Gomes, 453 Mass. 506, 512 (2009). A court deciding this question must determine “‘whether a reasonably prudent [person] in the [officer’s] position would be warranted’ in the belief ‘that the safety of the police or that of other persons was in danger.’” Id. (brackets in original), quoting, inter alia, Commonwealth v. Torres, 433 Mass.
 
--------------------------------------------------------------
 
[2] Both at oral argument and in the initial memorandum of law in support of the Motion to Suppress, Mora Polanco’s counsel argued, generally, that there was no evidence from which the police could have concluded reasonably that Mora Polanco was armed. Thus, Mora Polanco cannot be said to have waived the argument, and the Commonwealth has not urged me to find a waiver. Mora Polanco did not cite the cases that persuade me to reconsider my initial decision, however, until he filed his Motion to Reconsider.
 
                                                            -4-
 
669, 675-676 (2001). “While the officer need not be absolutely certain that the individual is armed, the basis for [the officer’s] . . . acts must lie in a reasonable belief that his safety or that of others is at stake.” Gomes, 453 Mass. at 512, quoting Commonwealth v. Silva, 366 Mass. 402, 406 (1974). This determination must be based “on specific and articulable facts and reasonable inferences therefrom, in light of the officer’s experience.” Id., quoting Commonwealth v. Wilson, 441 Mass. 390, 393-394 (2004). As Mora Polanco correctly emphasizes, although “drug involvement certainly may be a relevant factor in assessment of threats to police safety,” there is no “blanket rule that all persons suspected of drug activity are to be presumed armed and dangerous for constitutional purpose.” Commonwealth v. Washington, 449 Mass. 476, 483 (2007).
            In this case, the only evidence that police believed that Mora Polanco was armed when he entered the residence was Detective Kew’s testimony that, based on his training and experience as a narcotics detective, people involved in drug distribution often carry weapons. Although such knowledge certainly could form a part of a reasonable basis to believe that Mora Polanco was armed when he arrived at the residence, allowing it to serve as the sole basis for that conclusion in effect would be to adopt the “blanket rule” rejected by the Supreme Judicial Court in Washington, 449 Mass. at 483. That is, if police officers could justify patfrisks by simply reciting the litany that those involved in drug dealing often carry weapons, the resulting regime would, in effect, be the “blanket rule” rejected by the Washington Court.
            Gomes is the most instructive case on point. In Gomes, police patrolling a high- crime area of downtown Boston saw two men – the defendant and another individual – standing together in the doorway of a building. One of the officers recognized the defendant, Gomes, as someone who had been arrested the year before on drug- distribution charges. The officers observed what they reasonably believed to be a drug transaction. When the officers approached the defendant, he appeared to put something in his mouth and swallow it. One of the officers “asked the defendant what he was doing there, and . . . immediately conducted a pat-frisk for weapons.” Gomes, 453 Mass. at 508. During the patfrisk, five packages of “crack” cocaine fell onto the ground.
 
                                                            -5-
 
            In reversing the denial of the defendant’s motion to suppress in Gomes, the Supreme Judicial Court held that “the police lacked particular facts from which a reasonable inference could be drawn that the defendant was armed and presented a danger to the officer or others.” Id., 453 Mass. at 512 (emphasis added). In reaching this conclusion, the SJC reasoned that
[t]here was no evidence that the defendant’s criminal history included any weapons-related offenses. . . . Officer Walsh gave no testimony that the police observed anything suggesting that the defendant had a weapon. There was no evidence that the defendant made particular gestures or used any body language that would cause the officers to believe that he was carrying a weapon. . . . Further, there was no evidence that the defendant attempted to flee from the officers when they approached his location. Although the incident at issue occurred around 4 A.M. in a high crime area, Officer Walsh was not alone or outnumbered during his interaction where he was accompanied by two other officers . . . and the defendant’s only companion was [the other individual involved in the suspected drug transaction].
Id. at 512-513 (citations omitted). Each of these factors applies with essentially equal force in this case. As in Gomes, there are, in this case, no “particular facts from which a reasonable inference could be drawn that the defendant was armed.” Id. at 512. Nothing in the circumstances of this case, therefore, distinguish it in any relevant way from Gomes.
            The Commonwealth attempts to distinguish Gomes on the ground that, in that case, police observed a sale on the street of what the Commonwealth characterizes as a small amount of drugs. By contrast, the Commonwealth argues, the police encountered Mora Polanco in a private residential building, and they had a reasonable basis to suspect him of selling an amount of cocaine greater than the amount required for a trafficking charge. Although both proposed distinctions appear to characterize the facts in Gomes accurately, they do not make a difference in this case. Nothing in the Gomes
 
                                                            -6-
 
decision suggests that it would have come out differently had the encounter taken place in a private residence or involved a greater quantity of cocaine.[3]
            The other cases cited by the Commonwealth in its opposition do not dictate the contrary conclusion. In Commonwealth v. Moses, 408 Mass. 136 (1990), the Supreme Judicial Court held that a patfrisk during a car-stop was justified. In that case, however, the Court noted both that the passenger in the automobile “ma[de] . . . a possible gesture of concealment” and that the police officer “was outnumbered by the defendants, three to one.” Moses, 408 Mass. at 143, 142. The “possible gesture of concealment,” that the officer observed in Moses is the type of “particular fact[],” Gomes,
 
--------------------------------------------------------------
 
[3] The Commonwealth appears to cite Commonwealth v. Cabrera, 76 Mass. App. Ct. 341 (2010) for the proposition that the location of a suspected drug transaction in a secluded location is relevant to the question whether a patfrisk is justified. This is not a persuasive reading of Cabrera. Although it is true that the suspected transaction in Cabrera took place in a building, this was hardly central to the Court’s ruling in that case. Rather, the Supreme Judicial Court in Cabrera reasoned that
the suspected drug activity [in that case] was not an isolated sale between two individuals at street level, but a transaction of sufficient magnitude to occupy five men, two vehicles, and precautions designed to minimize police surveillance. The officers found themselves outnumbered five to two, at night, and in a dead-end alley. They knew nothing of the defendant or the other individuals, or whether any other participants might remain inside the building. In such a rapidly developing circumstance, it was neither imprudent nor constitutionally unreasonable for the police to view the whole as greater than the sum of its parts and conclude that sufficient danger existed to merit a patfrisk and that backup was required to do so safely.
Cabrera, 76 Mass. App. Ct. at 349. The holding in Cabrera, thus, was an unsurprising application of the principle that, in deciding whether a patfrisk is justified, “[t]he extent of the danger is central to ‘assessing whether the force used by the police in the encounter was commensurate with their suspicion.’” Id. at 348, quoting Commonwealth v. Willis, 415 Mass. 814, 8320 (1993). Notably, in this case, only one suspect was involved; there was no effort to avoid surveillance; the police significantly outnumbered the defendant; and there was no suggestion that he had any compatriots nearby. The Commonwealth’s suggestion, therefore, that the holding in Cabrera suggests that the indoor location of the interaction in this case justifies the patfrisk is unpersuasive.
 
                                                            -7-
 
453 Mass. at 512, that is absent in this case. Additionally, that police officers being outnumbered can, under certain circumstances, justify patfrisks, see Commonwealth v. Cabrera, 76 Mass. App. Ct. 341, 349 (2010), is of no consequence in this case, in which several officers confronted a lone suspect.
            Similarly, in Commonwealth v. Va Meng Joe, 40 Mass. App. Ct. 499, 509 (1996) – another case cited by the Commonwealth in opposition to the Motion to Reconsider – the defendant’s furtive gesture of reaching into his pocket “transformed the situation into one of imminent threat.” In Joe, the Supreme Judicial Court observed that the defendant’s behavior during a car stop “could reasonably have been considered by the police unexpected, suspicious, and menacing.” Id. When the defendant “reached into his pocket as he confronted [police],” his actions “supported a reasonable police belief that [he] . . . might not only be armed but was also preparing to pull out a weapon.” Id. at 509-510. Had there been testimony in this case that Mora Polanco did anything of this sort as he confronted police, it would likely have justified the patfrisk that happened. As there was no such evidence, however, Joe does not advance the Commonwealth’s argument.[4]
            Because I conclude that the patfrisk of Mora Polanco was not supported by any “particular facts from which a reasonable inference could be drawn that the defendant was armed and presented a danger to the officer or others,” Gomes, 453 Mass. at 512, I need not address his related argument that, even if the patfrisk was justified, it exceeded the permissible scope of such a search. If I did address the argument,
 
--------------------------------------------------------------
 
[4] Two other cases cited by the Commonwealth for the general proposition that drug dealing and violence often accompany each other – Commonwealth v. Hines, 449 Mass. 183 (2007) and Commonwealth v. Cannon, 449 Mass. 462 (2007) – indeed stand for that general proposition. The contexts in which the Hines and Cannon Courts state that proposition, however, make clear that their holdings do not advance the Commonwealth’s position in this case at all. That is because, if the cases were read as broadly as the Commonwealth urges me to read them, they would compel adoption of the ““blanket rule that all persons suspected of drug activity are to be presumed armed and dangerous for constitutional purpose” that the Supreme Judicial Court has expressly rejected. Washington, 449 Mass. at 483.
 
                                                            -8-
 
however, I likely would reject it. Although it is true that police located the hard object that they believed (and that was later confirmed to be) cocaine resting against Mora Polanco’s pubis, just above his genitals, there is no reason to conclude that police are not permitted to search that area for weapons. Contrast Commonwealth v. Amado, 474 Mass. 147, 149 (2016) (search of defendant’s buttocks and area behind his testicles “exceeded the permissible scope of a patfrisk for weapons”). Indeed, a contrary ruling would essentially permit those involved in criminal activity to conceal weapons in the pubic area with impunity.
            Finally, because the police lacked probable cause to search Mora Polanco’s Honda until they discovered the packet of cocaine concealed on his body, the fruits of the motor vehicle search are “fruits of the poisonous tree,” Commonwealth v. Yusuf, 488 Mass. 379, 394 (2021) (citations omitted) and, therefore, must also be suppressed.
CONCLUSION AND ORDER
            For the foregoing reasons, the Motion to Reconsider the Denial of Defendant’s Motion to Suppress Evidence is ALLOWED, and the Motion to Suppress – initially denied – is also ALLOWED.
 
/s/David A. Deakin Associate Justice
 
January 4, 2023
 
 
                                                            -9-
 
xxz