**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Wayne B. MITCHELL, Defendant–
Appellant.**

**No. 95–1378.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 25, 1995.

Decided April 19, 1996.

Barry Rand Elden, Chief of Appeals, Charles Ex (argued), Office of U.S. Atty., Crim. Appellate Div., Scott Charles Collins, Office of U.S. Atty., Chicago, IL, for U.S.

Sheldon Nagelberg (argued), Chicago, IL, for Wayne B. Mitchell.

Before CUMMINGS, COFFEY and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

A traffic stop of Wayne Mitchell's van led to the discovery of a loaded .25 caliber Raven semi-automatic pistol in a box between the front seats. Mr. Mitchell's pretrial motions to quash his arrest and to suppress evidence and statements were denied. After a jury trial, he was convicted of knowingly possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g), and sentenced to 264 months of imprisonment and five years of supervised release. On appeal Mr. Mitchell challenges the district court's denial of his motion to suppress. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

### A. *Facts*

At the suppression hearing, two police officers and the defendant Wayne Mitchell testified. The following evidence was presented through their testimony. On the afternoon of January 29, 1994, Sergeant James Sebastian of the Forest Park, Illinois, police department observed a 1986 Chevrolet Astro van being driven without a license plate attached to the front bumper. In the front seat of the van were a male driver and female passenger. As the van travelled past him, the sergeant checked the numbers on the rear license plate. The police computer informed him that the van belonged to Wayne Mitchell and also posted a warning of gang crime activity. Based on that information, the officer stopped the van and parked his squad car directly behind it. Both the Sergeant and the defendant got out of their respective vehicles and met between the van and the squad car. When the officer asked the driver for identification, Wayne Mitchell gave his name but could not produce his driver's license or insurance card. Sergeant Sebastian then informed Mr. Mitchell of the police record's reference to gang activity and conducted a pat-down search; he found nothing.

After Officer Stephen Weiler arrived as back-up, Sergeant Sebastian asked Mr. Mitchell for permission to look inside the van. According to the Sergeant, Mr. Mitchell said "go ahead." R.72-1 at 9. Officer Weiler heard the consent. Approaching the passenger side of the van, Sergeant Sebastian saw the female passenger, now in the rear area of the van. She got out, as he requested, identified herself as Cynthia Silva, and stood with Officer Weiler and Mr. Mitch-

ell behind the van. Sergeant Sebastian began searching the back of the van.

While Sergeant Sebastian was in the van, Officer Weiler asked Silva if the large bulge he had noticed in her jacket pocket was anything illegal. She replied "no" and started to reach for her pocket. The officer told her to stop; for the safety of the officers, he patted her down. In her pocket, he found a plastic bag containing smaller plastic baggies with a white powdery substance, which later tested positive for cocaine, and two prescription drug bottles. Officer Weiler then placed Silva and Mr. Mitchell under arrest and called Sergeant Sebastian.

When the sergeant, responding to his fellow officer's call, left the back of the van, he found Officer Weiler handcuffing Mr. Mitchell and Silva. The officer showed his sergeant the baggies found in Silva's pocket and then placed Silva in his squad car and Mr. Mitchell in Sergeant Sebastian's squad car. Officer Weiler testified that, at that point, he asked Mr. Mitchell once more if he could search his van and again was given consent.[1] While the sergeant was taking Mr. Mitchell to the police station, Officer Weiler searched the front of the van and found a loaded semi-automatic pistol in a cardboard box between the two front seats. He radioed Sergeant Sebastian to report his finding of the gun and then brought Silva to the police station. On the way, Officer Weiler read Silva her *Miranda* rights. Silva admitted that the plastic baggies contained cocaine and that she had planned to sell the bags; however, she denied any knowledge of the gun in the van. At the police station, after signing a *Miranda* and waiver of rights form, she repeated her admissions.

After Mr. Mitchell was booked and given his *Miranda* rights, he signed the waiver of rights form and stated that he understood his rights. Sergeant Sebastian then asked him about the gun and the cocaine. The defendant admitted that he had purchased the pistol found in the van for $100 a month earlier, and even warned that there was a bullet in the chamber. He insisted, however,

that he did not know about the baggies of cocaine recovered from Silva.

Mr. Mitchell also testified at the suppression hearing. He admitted that he was not carrying a driver's license or proof of insurance when Sergeant Sebastian requested them, but stated that there was a license plate in the front window of the van. He also admitted that he was a three-time convicted felon. Mr. Mitchell asserted that Sergeant Sebastian, but not Officer Weiler, had asked if he could conduct a search of the van. The defendant explained that, when Sergeant Sebastian asked if he could look in the van, Mr. Mitchell did not refuse the request. Instead, he testified that he made no response to the request: "I could have said no, but I didn't." R.72–1 at 98. He also stated that the officers were lying when they said that Mr. Mitchell gave his permission.

## B. *District Court Order*

In its Order of August 22, 1994, the district court made express credibility findings at the conclusion of its findings of fact. The court found the testimony of Sergeant Sebastian and Patrolman Weiler to be straightforward and credible. It determined that Mr. Mitchell's testimony, in contrast, was self-serving and not credible.

Turning to legal analysis, the court concluded that Mr. Mitchell initially was detained pursuant to a valid traffic stop under the Illinois Vehicle Code, 625 ILCS 5/3–413, for operating a vehicle without a front license plate. The court then considered the validity of the arrest. It held that, "[u]nder Illinois law, an arrest pursuant to a routine traffic offense is valid and may justify a full search of defendant's vehicle incident to that arrest." R.24 at 6 (citing *Illinois v. Bailey*, 159 Ill.2d 498, 203 Ill.Dec. 459, 639 N.E.2d 1278 (1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1116, 130 L.Ed.2d 1080 (1995); *United States v. Hope*, 906 F.2d 254, 257–58 (7th Cir.1990), *cert. denied*, 499 U.S. 983, 111 S.Ct. 1640, 113 L.Ed.2d 735 (1991)). The court concluded that Sergeant Sebastian had probable cause to believe an offense had been committed—

---

1. Officer Weiler testified: "I said [to Mr. Mitchell], are you sure it is okay if we search your van again. He said, go right ahead. I said, if you have anything illegal in the van let us know now because we are going to find it. And he said, no, go right ahead." Tr. at 54.

based on the missing front license plate and on Mr. Mitchell's driving without proof of valid automobile insurance—and thus was authorized to effectuate an arrest, regardless of his subjective intention not to arrest at that time. R.24 at 7 (citing *Hope,* 906 F.2d at 258; 725 ILCS 5/107–2(c)). Accordingly, the court concluded that the arrest of Mr. Mitchell was neither improper nor illegal and denied the defendant's motion to quash the arrest.

The court then denied Mr. Mitchell's motion to suppress evidence on the ground that the gun found in Mr. Mitchell's van was discovered pursuant to a valid consensual search. It also denied the motion to suppress statements made while in custody on the ground that Mr. Mitchell had been properly notified of his *Miranda* rights before he was subjected to questioning. Mr. Mitchell timely appealed.

## II

### DISCUSSION

■ On appeal Mr. Mitchell submits that the district court erred in finding that the search was incident to a lawful custodial arrest of the defendant. Under the present case law of this circuit, we review a district court's denial of a motion to suppress with great deference. We shall not disturb that ruling unless it is clearly erroneous. *United States v. Willis,* 61 F.3d 526, 529 (7th Cir.), *pet. for cert. filed,* (Oct. 23, 1995) (No. 95–6488); *United States v. Veras,* 51 F.3d 1365, 1370 (7th Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 540, 133 L.Ed.2d 444 (1995). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *United States v. Patterson,* 65 F.3d 68, 70 (7th Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 740, 133 L.Ed.2d 689 (1996) (citations omitted). With respect to findings of fact, we recognize that the court conducting the suppression hearing is in the best position to assess the credibility of the witnesses and to resolve any conflict in their testimony. Therefore, a holding of clear error results only when, "after our re-view of the evidence, we are firmly convinced that a mistake has been made." *Willis,* 61 F.3d at 529. With these standards in mind, we turn to the submissions of the defendant.

### A.

■ The district court's determination that Mr. Mitchell consented to the search of the van cannot be disturbed. The district court found that he consented when Sergeant Sebastian asked his permission. That finding of fact is supported by the record. Mr. Mitchell submits, however, that, because that permission was given prior to his arrest, it was negated by that arrest. Mr. Mitchell continues that the government has "a great burden" in proving consent when the defendant is in custody.

We have reviewed the suppression hearing transcript and the district court's order; Mr. Mitchell's position cannot prevail. The transcript reflects two consents by Mr. Mitchell: the first to Sergeant Sebastian, soon after the stop; the second to Officer Weiler, after the defendant was handcuffed and led to Sergeant Sebastian's squad car. The district court's findings of fact mention explicitly only the first of these two instances. According to the court, Mr. Mitchell expressly consented to Sergeant Sebastian's request to search his van, and Officer Weiler overheard the defendant's consent. R.24 at 2. The court also found that Sergeant Sebastian told Officer Weiler of the consent to search. *Id.* at 3. It then concluded that the "gun found in defendant Mitchell's vehicle was discovered pursuant to a valid, consensual search." *Id.* at 7.

We do not believe that the district court's failure to address the second exchange between the defendant and Officer Weiler is fatal to the government's submission that the search was conducted pursuant to a valid consent. At the outset, we note that, at the suppression hearing, Mr. Mitchell denied that this conversation ever took place; he testified that Officer Weiler never asked him for permission to search the van. Tr. at 93.

We also note that the fact that Mr. Mitchell formally was placed under arrest sometime after the first consent does not work as

an automatic withdrawal of the consent previously given. *See, e.g., Boyer v. United States,* 988 F.2d 56, 57 (8th Cir.1993) (stating that "custody alone does not negate voluntary consent"); *United States ex rel. Lundergan v. McMann,* 417 F.2d 519, 521 (2d Cir. 1969) (stating that "the mere fact that a suspect is under arrest does not negate the possibility of a voluntary consent").

■ Consent to search may, of course, be withdrawn or limited by a criminal suspect, see *Florida v. Jimeno,* 500 U.S. 248, 252, 111 S.Ct. 1801, 1804, 114 L.Ed.2d 297 (1991) ("A suspect may of course delimit as he chooses the scope of the search to which he consents."); *United States v. Jachimko,* 19 F.3d 296, 299 (7th Cir.1994) (stating general principle that consent may be withdrawn) (citing *United States v. Dyer,* 784 F.2d 812, 816 (7th Cir.1986)). However, when a suspect does not withdraw his valid consent to a search before the illegal weapon or substance is discovered, the consent remains valid and the seized illegal item is admissible. *Id.; Dyer,* 784 F.2d at 816; *see also United States v. Maldonado,* 38 F.3d 936, 941 (7th Cir.1994) (affirming district court's finding that defendant did not withdraw his consent or limit the scope of consent by expressing concern that gift-wrapped packages might be damaged by search), *cert. denied,* — U.S. ——, 116 S.Ct. 205, 133 L.Ed.2d 138 (1995). In this case, Mr. Mitchell does not assert that he withdrew his first consent, and nothing in his conduct reflects that he limited the scope of the consensual search after he was handcuffed. *See United States v. Berke,* 930 F.2d 1219, 1223 (7th Cir.) (defendant's conduct can be indicative of the scope of the consensual search), *cert. denied,* 502 U.S. 896, 112 S.Ct. 269, 116 L.Ed.2d 221 (1991).[2]

■ Finally, although the district court did not make explicit findings about Mr. Mitchell's conversation with Officer Weiler, it did find the officer's testimony to be "credible and forthright." R.24 at 5. By contrast, it found the testimony of the defendant to be "self-serving and not credible." *Id.* Absent clear error, we treat the trial court's choice of whom to believe as conclusive on appeal. *Veras,* 51 F.3d at 1371.

**B.**

We believe that the search also can be sustained on an alternative ground.

■ The Fourth Amendment generally prohibits the police from conducting searches without a warrant obtained from a judicial officer who finds that there was probable cause for the search. A warrantless search or seizure is *"per se* unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions based on the presence of 'exigent circumstances.' " *Coolidge v. New Hampshire,* 403 U.S. 443, 474–75, 91 S.Ct. 2022, 2042, 29 L.Ed.2d 564 (1971); *see also United States v. Bennett,* 908 F.2d 189, 192 (7th Cir.), *cert. denied,* 498 U.S. 991, 111 S.Ct. 534, 112 L.Ed.2d 544 (1990). One of these exceptions was announced in *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685 (1969); a warrantless search may be conducted incident to a lawful custodial arrest, but the search must be limited to the person[3] arrested and to the immediately surrounding area. As a corollary principle to the one developed in *Chimel,* a search of the interior of an automobile may be conducted when that search is incident to a lawful custodial arrest of the occupant of the automobile. *New York v. Belton,* 453 U.S. 454, 459–60,

**2.** *Cf. United States v. McCarthur,* 6 F.3d 1270, 1277 (7th Cir.1993) (detention of bag for a canine search did not vitiate the voluntary consent to search that bag); see also *United States v. James,* 40 F.3d 850, 875–76 (7th Cir.1994) (consent given while under arrest deemed voluntary), *vacated on other grounds,* — U.S. ——, 116 S.Ct. 664, 133 L.Ed.2d 515 (1995); *United States v. Betts,* 16 F.3d 748, 753–54 (7th Cir.1994) (same); *United States v. Kozinski,* 16 F.3d 795, 810 (7th Cir.1994) (same); *United States v. Lechuga,* 925 F.2d 1035, 1041–42 (7th Cir.1991) (same); *Unit-*

*ed States v. Rojas,* 783 F.2d 105, 109–10 (7th Cir.) (same), *cert. denied,* 479 U.S. 856, 107 S.Ct. 195, 93 L.Ed.2d 127 (1986).

**3.** "[I]n the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." *United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973).

101 S.Ct. 2860, 2863–64, 69 L.Ed.2d 768 (1981). In *Belton,* Justice Stewart wrote for the Court:

> [W]e hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.
>
> It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. Such a container may, of course, be searched whether it is open or closed....

*Id.* at 460–61, 101 S.Ct. at 2864–65.

██ It is clear that the firearm admitted into evidence in this case was the product of a lawful search incident to the arrest of Mr. Mitchell's companion, Cynthia Silva. Sergeant Sebastian found Silva in the van and asked her to get out. The subsequent patdown, conducted immediately thereafter at the rear of the vehicle, produced the contraband that led to her arrest. *Belton* firmly establishes that the officers had the authority to search the immediate vicinity of her arrest for weapons or evidence and that the area of that search includes the interior of the vehicle in which she was found immediately before the arrest. *United States v. Arango,* 879 F.2d 1501, 1506 (7th Cir.1989), *cert. denied,* 493 U.S. 1069, 110 S.Ct. 1111, 107 L.Ed.2d 1019 (1990). The fact that Silva had been handcuffed and placed in the police vehicle just prior to the commencement of the search that yielded the firearm does not affect the lawfulness of the search. *Id.* at 1505. As we said in *United States v. Karlin,* 852 F.2d 968, 971 (7th Cir.1988), *cert. denied,* 489 U.S. 1021, 109 S.Ct. 1142, 103 L.Ed.2d 202 (1989), "it does not make sense to prescribe a constitutional test that is entirely at odds with safe and sensible police procedures."

### Conclusion

We conclude that the district court correctly determined that the weapon discovered in the front seat of Mr. Mitchell's van was the result of a legal search that was valid both because of Mr. Mitchell's consent and because it was incident to the lawful custodial arrest of his passenger. Accordingly, the judgment of the district court is

AFFIRMED.