NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11475

COMMONWEALTH  vs.  PAUL STEWART.


Plymouth.     March 6, 2014. - August 7, 2014.

Present:  Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.[1]


Controlled Substances.  Habitual Offender.  Constitutional Law, Search and seizure, Investigatory stop, Probable cause, Reasonable suspicion.  Threshold Police Inquiry.  Probable Cause.  Search and Seizure, Threshold police inquiry, Reasonable suspicion, Search incident to lawful arrest, Fruits of illegal search, Probable cause.



Indictments found and returned in the Superior Court Department on July 23, 2008.

A pretrial motion to suppress evidence was heard by Frank M. Gaziano, J., and the cases were tried before Judith Fabricant, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.


James P. Vander Salm for the defendant.
Zachary Hillman, Assistant District Attorney (Melissa L. Brooks, Assistant District Attorney, with him) for the Commonwealth.

---

[1] Justice Ireland participated in the deliberation on this case prior to his retirement.

Michael J. Fellows, Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.
William W. Adams, for Tari Richardson, amicus curiae, submitted a brief.

GANTS, J.  A Superior Court jury convicted the defendant of possession of a class B substance (cocaine) with intent to distribute, in violation of G. L. c. 94C, § 32A (c).[2]  After that guilty finding, in the second part of a bifurcated trial, the jury found that the defendant had previously been convicted in 2006 of distribution of a class B substance and in 1994 of assault and battery by means of a dangerous weapon, and that he had been committed to prison for not less than three years on each of these prior convictions.  As a result, the defendant was sentenced both under G. L. c. 94C, § 32A (d), which provides for a sentence of not less than five years nor more than fifteen years in State prison where a defendant is convicted of a violation of § 32A (c) after an earlier conviction of that offense, and under G. L. c. 279, § 25, as a habitual offender, which requires that the defendant "be punished by imprisonment in the [S]tate prison for the maximum term provided by law as a penalty for the felony for which he is then to be sentenced," which the judge determined to be the statutory maximum of fifteen years in State prison.  In an unpublished memorandum and

_____

[2] The jury found the defendant not guilty of possession of cocaine with intent to distribute in a school zone.

order pursuant to rule 1:28 of the Appeals Court, a panel of that court affirmed both the conviction and the sentence. Commonwealth v. Stewart, 81 Mass. App. Ct. 1135 (2012). We granted the defendant's application for further appellate review.

On appeal, the defendant claims that the judge erred in denying his motion to suppress, that the defendant was prejudiced by the admission of statements made by the prosecutor and some of the Commonwealth's witnesses that suggested that the defendant was known to be a drug dealer, and that the sentence was illegal because he was sentenced both as a subsequent offender and as a habitual criminal. We conclude that the motion to suppress should have been allowed and therefore vacate the defendant's conviction. Because the conviction is vacated and there is no significant likelihood that the case can be tried without the evidence that has been suppressed, we do not reach the trial or sentencing issues.[3]

Motion to suppress. We summarize the facts as found by the motion judge, supplementing those findings with evidence in the record that is uncontroverted and that was implicitly credited by the judge. See Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007), S.C., 450 Mass. 818 (2008), and cases cited.

---

[3] We acknowledge the amicus briefs submitted by the Committee for Public Counsel Services and counsel for Tari Richardson.

In the early evening of May 22, 2008, Sergeant Detective William Dwan, and Officers Peter Chu, John Ryle, and Brian Linehan of the Boston police department were returning to the police station in an unmarked sport utility vehicle after completing an undercover assignment.  In Boston's theater district, Dwan observed the defendant walking on Washington Street followed by two men and one woman.  The woman was counting currency.  Dwan recognized the defendant because he had arrested him for the distribution of "crack" cocaine to an undercover police officer three years earlier in the same area. The officers observed the group turn onto Hayward Place, a narrow one-way street which, in the officers' experience, was a popular area for drug use, because drug users could "duck into a number of doorways on the side street."  The officers parked near the intersection of Hayward Place and the Harrison Avenue extension.  From that vantage point, Dwan "observed the group huddle together in a doorway for a brief period of time, exchange something, and then separate."

The woman and one of the men walked toward Washington Street, while the defendant and the other man walked down Hayward Place in the direction of the officers.  After the defendant had separated from the man with whom he had been walking and walked alone a short distance, Ryle and Chu left the vehicle and approached the defendant.  Ryle displayed his police

badge and ordered the defendant to stop and identify himself. The defendant complied. Shortly thereafter, Dwan approached and asked the defendant where he had been. The defendant denied that he had been at Hayward Place or had met others there.

Dwan then inquired about the contents of the thin nylon backpack that the defendant was carrying, which "was noticeably weighed down with an object." The defendant stated that the backpack contained his cellular telephone charger. Dwan asked for permission to search the bag, whereupon the defendant removed the bag and handed it to him. Dwan removed a hard box that was designed to look like a cigarette package, but was "noticeably heavier." At this point, the defendant changed his mind and told Dwan that he could not look in the bag. On opening the box, Dwan discovered that it was a digital scale, which contained a white powder residue that he believed to be cocaine. The defendant was then arrested for possession of cocaine. In the search of the defendant that immediately followed, the officers found money and a plastic bag containing twelve smaller packages of cocaine.

The defendant moved to suppress all evidence seized as a result of his stop and subsequent arrest. The motion judge found that the officers had probable cause to believe that the defendant had participated in a drug transaction at the time they stopped him, based on their observations, experience, and

familiarity with the defendant.  Accordingly, the motion judge concluded that the officers searched the defendant incident to a valid arrest, and denied the defendant's motion to suppress.

A panel of the Appeals Court affirmed the denial of the motion to suppress, albeit on different grounds.  Commonwealth v. Stewart, 81 Mass. App. Ct. 1135.  The panel concluded that the officers' observations of "what they believed, based on their training and experience, to be a street-level drug transaction" created "at least reasonable suspicion to stop the defendant and inquire further into his activities."  The panel also concluded that the reasonable suspicion ripened into probable cause after the defendant lied about where he had just been.  Id.

We accept the judge's findings of fact unless clearly erroneous.  Commonwealth v. Leahy, 445 Mass. 481, 485 (2005), citing Commonwealth v. Sicari, 434 Mass. 732, 746-747 (2001), cert. denied, 534 U.S. 1142 (2002).  Applying this standard, we accept all the judge's findings except one:  his finding that Dwan "observed an exchange of an unknown object."  A careful look at Dwan's testimony reveals that he did not see such an exchange, but inferred from what he saw that an exchange had occurred.  Dwan testified that he had an unobstructed view of the four persons after they "huddled together," but could see only "their upper torso area."  When initially asked, "Did you

see any exchange at all," he answered, "No, I didn't." The prosecutor later read Dwan an excerpt from his grand jury testimony, where he had stated, "On this occasion, I watched all three [sic] parties walk together, stop halfway up on Haeyward Place, and appear to make an exchange at that location." The prosecutor attempted to rephrase Dwan's grand jury testimony by asking, "[Y]ou testified that you saw an exchange, correct?" Dwan answered, "yes," even though that was not what he said to the grand jury; he said there that they "appear[ed] to make an exchange." There was no evidence at the motion hearing, either from what Dwan testified to at the hearing or before the grand jury, that Dwan actually observed an exchange.

Our finding that Dwan did not see an exchange, but simply inferred from what he knew and saw that an exchange had occurred, is supported by the absence of any evidence as to who participated in the exchange. If Dwan truly had observed an exchange, he could have testified to who made the exchange; he did not. Consequently, there was no evidence that the defendant participated in the exchange that Dwan inferred had happened during the "huddle."

We conclude that the investigatory stop of the defendant was supported by reasonable suspicion. "A police officer may make an investigatory stop 'where suspicious conduct gives the officer reasonable ground to suspect that a person is

committing, has committed, or is about to commit a crime.' . . . The action of the officer 'must be based on specific and articulable facts and reasonable inferences therefrom, in light of the officer's experience.'" Commonwealth v. Gomes, 453 Mass. 506, 510-511 (2009), quoting Commonwealth v. Wilson, 441 Mass. 390, 394 (2004). In view of Dwan's experience in drug investigations, he had reasonable grounds to suspect that he had witnessed a drug transaction based on the information he had earlier acquired (that the defendant, three years earlier, had been arrested for distributing narcotics to an undercover police officer in the theatre district of Boston) and that he had just acquired from his observations (three persons followed the defendant down a narrow street often used by drug users, with the woman counting currency as she walked, and then all four huddled briefly together in a doorway, before they dispersed).

Based on reasonable suspicion, the officers lawfully stopped the defendant and questioned him as to what had just happened. But reasonable suspicion alone was not sufficient to allow Dwan lawfully to open the hard cigarette box, where there was nothing to suggest that a weapon was inside.[4]

---

[4] On appeal, the Commonwealth does not argue that the officers were justified in opening the cigarette box based on a reasonable belief that the defendant was armed and dangerous, and that the cigarette box may have contained a weapon. See Commonwealth v. Gomes, 453 Mass. 506, 512 (2009).

Nor was opening the cigarette box lawful based on the defendant's initial consent to Dwan's looking inside his backpack, where the defendant had withdrawn his consent before Dwan opened the cigarette box.  A consent to search can be withdrawn or limited at any time before completion of the search.  United States v. Mitchell, 82 F.3d 146, 151 (7th Cir.), cert. denied, 519 U.S. 856 (1996), citing Florida v. Jimeno, 500 U.S. 248, 252 (1991).  See, e.g., Commonwealth v. Caputo, 439 Mass. 153, 163 (2003), quoting United States v. Dichiarinte, 445 F.2d 126, 129 n.3 (7th Cir. 1991) ("defendant's consent may limit the extent or scope of a warrantless search"); 4 W. LaFave, Search and Seizure § 8.1 (c) at 58 (5th ed. 2012) ("consent usually may be withdrawn or limited at any time prior to the completion of the search").  Although evidence found during the search before the withdrawal of the consent may be lawfully admitted, a search must end on the withdrawal of consent where there is no other legal justification.  See United States v. Mitchell, supra; 4 W. LaFave, Search and Seizure, supra. Consequently, as the motion judge and the Appeals Court recognized, Dwan's opening of the cigarette box was lawful only if it was a search incident to arrest, supported by probable cause.  We therefore turn to the question whether there was probable cause to arrest the defendant at the time the box was opened.

"[P]robable cause exists where, at the moment of arrest, the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an offense." Commonwealth v. Santaliz, 413 Mass. 238, 241 (1992), quoting Commonwealth v. Storey, 378 Mass. 312, 321 (1979), cert. denied, 446 U.S. 955 (1980). Probable cause may be established where the "silent movie" observed by an experienced narcotics investigator reveals "a sequence of activity consistent with a drug sale at a place notorious for illicit activity in narcotics." Commonwealth v. Santaliz, supra at 242. In Commonwealth v. Kennedy, 426 Mass. 703, 704 (1998), we concluded that probable cause existed where experienced narcotics officers observed a man who was known to have been arrested previously for narcotics sales engage in the following "silent movie" sequence: the man approached the passenger side of a vehicle that had stopped at a street curb, put his head inside the open window and appeared to exchange words with the driver (the defendant), who was alone in the vehicle; the man ran away, only to return one minute later and exchange something with the driver of the vehicle, and then the man walked away and the vehicle drove off. Similarly, in Commonwealth v. Santaliz, 413 Mass. at 241, we found probable cause (although we "found the case 'close'") where an experienced narcotics officer saw this

"silent movie" sequence:  the defendant was seated near a woman on the front porch of a "soup kitchen" known as a place of high incidence of drug activity when a taxicab stopped in front of the building; the woman took something from her waistband and handed it to the defendant; the defendant silently handed the object to a person in the taxicab, who gave the defendant money in return; the person left in the taxicab, and the defendant gave the money to the woman.  Id. at 239-240.

The "silent movie" sequence in this case is comparable but with two significant differences:  first, Dwan inferred that an exchange of something occurred but did not see an exchange; and, second, there was no evidence that the defendant exchanged anything himself.  As to the first difference, in each of the cases cited by the motion judge and by the Commonwealth where probable cause was found based on the inference of an illegal exchange, an officer saw the defendant make an exchange with another person.  See Commonwealth v. Kennedy, 426 Mass. at 704 ("Morales reached into the vehicle toward Kennedy, while Kennedy reached toward Morales"); Commonwealth v. Santaliz, 413 Mass. at 240 ("The defendant handed the object to the woman, and she gave him money").  See also Commonwealth v. McCoy, 59 Mass. App. Ct. 284, 286 (2003) (officers observed woman pass cash "through the rolled-down front-seat passenger's window to the passenger"); Commonwealth v. Gant, 51 Mass. App. Ct. 314, 315 (2001) (officer

"saw the defendant exchange something with Gonzalez"). Although we do not require "that an officer must actually see an object exchanged," the suspect's movements, as observed by the officer, must provide factual support for the inference that the parties exchanged an object. Commonwealth v. Kennedy, supra at 710. See Commonwealth v. Levy, 459 Mass. 1010, 1011 (2011), quoting Commonwealth v. Kennedy, supra at 711 ("While we reject a per se rule that an officer must actually see an object exchanged to have probable cause to arrest," failure to see such exchange "weakens the Commonwealth's probable cause showing"). Here, the officer testified that the defendant and three companions huddled in a doorway, but his view was limited to their "upper torso area" and he did not testify to seeing the defendant make any hand movements suggesting an exchange or to seeing any object passing between the defendant and any of his companions. See, e.g. Commonwealth v. Levy, 459 Mass. at 1011 (finding no probable cause where "[n]o officer saw an actual exchange of any kind").

As to the second difference, in each of the cases cited above, the apparent exchange involved only two persons, with one of them being the defendant, so if there was any exchange, there was no doubt that the defendant participated in it. Here, the defendant huddled with three individuals so, if there was an exchange, there was no certainty that the defendant participated

in it.  The failure to observe an actual exchange and the number of suspects who could have participated in any such exchange, when considered together, significantly weaken the weight of the Commonwealth's evidence.  Although that evidence is sufficient for reasonable suspicion, it falls short of probable cause.

The defendant's false denial that he had been on Hayward Place or had met others there permits the reasonable inference that something occurred during that "huddle" that the defendant did not want to admit to the police and strengthens the suspicion that the defendant had participated in a drug transaction.  We recognize that, in some instances, the added inferential weight of a false denial may be sufficient to turn reasonable suspicion into probable cause.  See Commonwealth v. Riggins, 366 Mass. 81, 88 (1974) ("Implausible answers to police questions will, with other facts, support a finding of probable cause to conduct a search").  But we conclude here that, even when this inference is added to the weight of the totality of the evidence known to the officers before Dwan opened the cigarette box, the evidence still falls short of probable cause.  There inevitably is a narrow line separating reasonable suspicion from probable cause, but in this "silent movie," where the observing police officer saw four people in a huddle but did not see the defendant himself (or anyone) actually make an exchange, the inference of an actual

distribution of a controlled substance involving the defendant falls on the reasonable suspicion side of that line.[5]

Therefore, we conclude that there was no probable cause to make an arrest when the cigarette box was opened, and that the opening of that box cannot be justified as a search incident to arrest. Because the seizure of the plastic bag containing cocaine and the cash found during the search of the defendant was a fruit of the illegal search of the cigarette box, the cocaine and the cash should have been suppressed. Where the prosecution's case rested primarily on the defendant's possession of these items, the admission of the cocaine and cash was not harmless beyond a reasonable doubt. The defendant's conviction must therefore be vacated and a new trial ordered.

Because we vacate the conviction and doubt that the Commonwealth realistically can retry the case without the suppressed cocaine, we do not reach the issue regarding the legality of the defendant's sentence. Nor need we reach the

---

[5] We recognize that probable cause is an objective test, and does not depend on whether the officers subjectively believed there was probable cause, see Commonwealth v. Franco, 419 Mass. 635, 639 (1995), citing Commonwealth v. Hason, 387 Mass. 169, 175 (1982), but we note that Dwan, an experienced sergeant detective who had been in the drug control unit for nine years before this incident, did not arrest the defendant after he lied about his whereabouts. Instead, Dwan placed the defendant under arrest only when Dwan saw the cocaine residue on the digital scale inside the cigarette box and even then arrested the defendant for possession of the cocaine residue, not for whatever happened during the "huddle" a few minutes earlier.

issue whether a substantial risk of a miscarriage of justice arose from statements made by the prosecutor and some of the Commonwealth's witnesses that suggested that the defendant was known to be a drug dealer.

Conclusion.  Because the defendant's motion to suppress should have been allowed, and the admission of the evidence that should have been suppressed was not harmless beyond a reasonable doubt, we vacate the defendant's conviction and remand the case to the Superior Court to allow the Commonwealth the opportunity to decide whether it will enter a nolle prosequi or proceed with a new trial.

So ordered.