NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-1100                                              Appeals Court

COMMONWEALTH  vs.  EMERY SANDERS.

No. 15-P-1100.

Essex.      October 7, 2016. - November 15, 2016.

Present:  Agnes, Maldonado, & Desmond, JJ.

Controlled Substances. Practice, Criminal, Motion to suppress,
     Assistance of counsel. Search and Seizure, Probable cause.
     Probable Cause. Constitutional Law, Search and seizure,
     Probable cause, Assistance of counsel.


     Indictments found and returned in the Superior Court
Department on August 5, 2013.

     A pretrial motion to suppress evidence was heard by David
A. Lowy, J., and the cases were tried before James F. Lang, J.


     James E. Methe for the defendant.
     Catherine Langevin Semel, Assistant District Attorney, for
the Commonwealth.


     AGNES, J.  For more than seventy-five years, we have

avoided an overly formulaic approach to the determination of

whether there is probable cause to search or arrest a person who

is suspected of participation in a street-level drug

transaction.  Instead we endorsed the observation made in

Brinegar v. United States, 338 U.S. 160, 175 (1949):  "In
dealing with probable cause, however, . . . we deal with
probabilities.  These are not technical; they are the factual
and practical considerations of everyday life on which
reasonable and prudent men [and women], not legal technicians,
act."  For example, in Commonwealth v. Santaliz, 413 Mass. 238,
241 (1992), the Supreme Judicial Court set forth a nonexclusive
list of factors that, when taken together, support a ruling that
there was probable cause to search a person in the context of a
suspected street-level drug transaction.[1]  In Commonwealth v.

_____

[1] The factors deemed relevant to the probable cause
determination included the following:  (1) the observation of an
unusual transaction; (2) furtive actions by the participants;
(3) the event occurs in a location where the police know drug
transactions are common; and (4) an experienced officer on the
scene regards the event as consistent with a street-level drug
transaction.  Santaliz, supra.  In Santaliz, a police officer
experienced in narcotics investigations observed the defendant
and a woman seated on the front porch of a "soup kitchen" in a
neighborhood known to the police for its high incidence of drug
sales.  Id. at 239.  A taxicab stopped directly in front of the
location where the pair were seated.  Id. at 239-240.  The woman
removed something from her waistband and handed it to the
defendant, who went to the taxicab.  Id. at 240.  The defendant
handed the object to an individual who had exited from the
taxicab and that individual gave him money.  Ibid.  No words
were spoken.  Ibid.  The individual who received the object
returned to the taxicab and left.  Ibid.  The defendant then
gave the money to the woman.  Ibid.  Those facts were deemed
sufficient to establish probable cause to search the defendant
and the woman who remained seated.  Id. at 241.  See
Commonwealth v. Freeman, 87 Mass. App. Ct. 448, 451-453 (2015).

Kennedy, 426 Mass. 703, 708-711 (1998),[2] the court added that while there is no per se rule (and the court declined to adopt such a rule) that an officer must observe an identifiable object being passed or received in order to have probable cause to believe a street-level drug transaction had occurred, "whether the officer sees an object exchanged is an important piece of evidence that supports probable cause, and its absence weakens the Commonwealth's probable cause showing."  More recently, in Commonwealth v. Stewart, 469 Mass. 257, 263 (2014), the court took a step beyond Kennedy, and stated that, in these cases, "the suspect's movements, as observed by the officer, must provide factual support for the inference that the parties exchanged an object."  See Commonwealth v. Ilya I., 470 Mass. 625, 631 (2015).

The principal question presented for our review in the present case is whether a police officer, experienced in drug

---

[2] In Kennedy, a police officer, who was an experienced narcotics investigator, had observed a vehicle stop on the corner of an intersection known as a "high crime area, high drug area."  Kennedy, supra at 704.  The officer then saw a man, who the officer knew had previously been arrested for selling drugs, walk over to the passenger side of the vehicle, put his head in the window, and briefly exchange words with the defendant, who was the driver and sole occupant.  Ibid.  The man then ran away, only to return to the vehicle in one minute, reach into the vehicle toward the defendant, appear to exchange something with the defendant, and then walk away as the vehicle left the scene.  Ibid.  In concluding that there was probable cause to search the defendant, the court explained that it was significant that the officer knew that the man had a reputation for drug dealing, which included previous arrests.  Id. at 709-710.

investigations, had probable cause to believe a street-level drug transaction had occurred even though there was no observation of either an actual exchange between the parties or furtive movements.  We agree with the motion judge that the events in question, when viewed through the eyes of an experienced drug investigator, were sufficient to permit the officer to infer that an exchange had occurred and to establish probable cause for the seizure and subsequent search of the defendant.  Accordingly, for the reasons that follow, we affirm.

Background.  The defendant appeals from three drug convictions arising out of two separate incidents on July 5 and July 12, 2013.  Two indictments charged possession with intent to distribute cocaine, subsequent offense, in violation of G. L. c. 94C, § 32A(b), and one indictment charged possession of heroin, subsequent offense, in violation of G. L. c. 94C, § 34.[3] The defendant moved to suppress the evidence recovered from his person on July 5, on the grounds that the officer had lacked any justification to search, seize evidence from, or arrest him.  He also contended that the evidence recovered from his person and any statements he made on July 12, when he was arrested on a probation warrant resulting from his July 5 arrest, should be suppressed as the "fruit of the poisonous tree."  On January 15,

_____

[3] One indictment charging possession with intent to distribute heroin, subsequent offense, in violation of G. L. c. 94, § 32A(b), was nol prossed.

2014, following an evidentiary hearing, the motion judge denied the motion to suppress. Following a jury-waived, bifurcated trial in accordance with G. L. c. 278, § 11A, the defendant was found guilty of the counts and sentenced to a term of imprisonment in State prison.[4]

1. Evidence presented at motion to suppress hearing. On the evening of July 5, 2013, Officer Paul Holey, a twenty-year veteran of the Lynn police department, was conducting a patrol, driving in a marked police cruiser, in the Hamilton Avenue area of Lynn with his partner, Officer Paul Wonoski. Officer Holey had patrolled that area for four years, and had made "many arrests" for offenses including drugs and weapons. Officer Holey described a common method of selling drugs in that area in the form of "car meets," wherein a buyer would arrive via a vehicle, use a cellular telephone (cell phone) to contact a seller, and then arrange an in-person transaction at the vehicle.

At about 7:41 P.M., Officer Holey observed a green Ford Explorer with Maine license plates parked on Hamilton Avenue. Officer Holey also observed that the vehicle's only occupant was a woman using a cell phone. Officers Holey and Wonoski passed the vehicle and circled around the block. Upon reapproaching

---

[4] After a sentence appeal to the Appellate Division of the Superior Court, the defendant's sentence to State prison was modified.

the vehicle from behind at a distance of about twenty to twenty-five yards away, Officer Holey observed the defendant, who was standing next to the front passenger-side window, reach into the vehicle "making a passing motion" with his hand, quickly pull his hand out, and then immediately walk away.  Officer Holey did not see any exchange between the two individuals.  Officer Holey recognized the defendant as someone whom he had arrested in the past for cocaine distribution.

After observing what he believed to be a narcotics transaction, Officer Holey got out of the cruiser, called out the defendant's name, and approached the defendant, while Officer Winoski approached the vehicle.  The defendant stopped after hearing Officer Holey.  Officer Holey asked the defendant where he was going, and stated that he believed that the defendant had just engaged in a drug transaction.  While speaking to him, Officer Holey noticed United States currency sticking out of the defendant's right front pocket.  Officer Holey withdrew the bills from the defendant's pocket and identified them as three fifty-dollar bills.

Officer Holey then conducted a patfrisk of the defendant and felt a hard object in the defendant's front right pocket. Officer Holey withdrew the object and identified it as a large folding knife.  Officer Holey observed that the blade of the knife was over two and one-half inches long, in violation of a

Lynn municipal ordinance, and placed the defendant under arrest.[5] Officer Holey then placed the defendant in the back of his cruiser and went to assist Officer Wonoski who was with the driver of the Ford Explorer.

As Officer Holey was walking away from the cruiser, the defendant called out to him and stated that he had "a couple bags" of "crack" cocaine in one of his shoes.  The defendant was transported to the police station, where he was searched.  That search revealed three "twists" (or knotted plastic bags) of crack cocaine and one twist of heroin in the defendant's right sock, and a total of $801 in United States currency on his person.[6]

2. <u>Evidence presented at trial</u>.  Officer Holey testified at trial in a manner consistent with his testimony at the motion to suppress hearing.  In addition, two chemists from the State

---

[5] While conducting a further search of the defendant, Officer Holey discovered a small plastic container that had an odor of cocaine.

[6] On the morning of July 12, 2013, Lynn police Officer Kelly Aylward and her partner, Detective Timony Nerich, were surveying an area on Albany Street in Lynn, in search of the defendant based on an outstanding warrant for his arrest.  That warrant was issued based on the defendant having violated his probation due to the July 5 arrest.  After observing the defendant walk out of and, after about two minutes, reenter the front door of a specific house, the officers went to that house and arrested the defendant.  Upon searching the defendant's person, Detective Nerich recovered eight twists of a rock-like substance, which he identified as crack cocaine, as well as jewelry; a cell phone was discovered when the defendant was searched at the police station.

police crime laboratory testified. Chemist Lisa Yelle tested the substances recovered from the defendant during the July 5 stop and confirmed that those substances were crack cocaine and heroin. Chemist Kimberly Dunlap tested the substance recovered from the defendant during his arrest on July 12. Dunlap tested the substance contained in three of the twists and concluded that the substance in each twist, which weighed about less than one-half gram, was cocaine. Dunlap testified that the cumulative weight of the substance in the eight twists, including the packaging, was 3.59 grams. According to the drug evidence verification form, Dunlap determined that the total weight of the packet, which included the narcotics and their packaging, delivered to the laboratory was 28.9 grams.

Discussion. 1. Standard of review. When reviewing an order on a motion to suppress evidence, we accept the motion judge's subsidiary findings of fact absent clear error, and give substantial deference to the judge's ultimate findings and rulings. Commonwealth v. Fisher, 86 Mass. App. Ct. 48, 50 (2014). Nonetheless, we independently review the judge's application of constitutional principles to the facts as found. See Commonwealth v. Kaupp, 453 Mass. 102, 105 (2009).

2. Motion to suppress. The parties agree that the defendant was not seized when Officer Holey called out his name and approached him. See Commonwealth v. DePeiza, 449 Mass. 367,

370 (2007); Commonwealth v. Pimentel, 27 Mass. App. Ct. 557, 560-561 (1989). Instead, the defendant was seized when officer Holey removed the three fifty-dollar bills from his pants pocket. See Commonwealth v. Gomes, 453 Mass. 506, 510 (2009). By that time, according to the motion judge, Officer Holey had probable cause to arrest the defendant.

The defendant's principal argument is that he was unconstitutionally seized because only two of the four Santaliz factors, see note 1, supra, were present: he was in an area known to the police as a location where drug transactions regularly occurred, and the officer was an experienced narcotics investigator. However, on the record before us, a third Santaliz factor was present. Officer Holey was entitled to consider the unusual nature of the event he observed. The motion judge specifically credited Officer Holey's testimony. Officer Holey observed a vehicle with Maine license plates parked in an area of Lynn in which narcotics transactions frequently take place by means of "car meets." The driver, and only occupant, of the vehicle had made a call on her cell phone, and shortly thereafter the defendant approached the vehicle's front passenger window, reached his hand through the window into the vehicle "making a passing motion," and then quickly withdrew his hand. The defendant then walked away with United States currency visibly sticking out of his pocket. To an experienced

narcotics investigator, such as Officer Holey, an inference could be drawn that the defendant hurriedly engaged in a narcotics transaction with the occupant of the vehicle.  Based on his experience, Officer Holey was permitted to infer that this was an unusual transaction that was consistent with a street-level drug sale.  However, the question is whether this confluence of circumstances -- an experienced drug investigator witnessing an unusual transaction that is consistent with a street-level drug sale in an area in which such transactions regularly occur -- satisfies the requirement in Stewart that "the suspect's movements, as observed by the officer, must provide factual support for the inference that the parties exchanged an object."  Stewart, 469 Mass. at 263.  We conclude that with the addition of the remaining and critically important factor that the defendant was known to the officer as a person who previously had been arrested for distributing cocaine, the answer is "yes."[7]

---

[7] For purposes of assessing whether reasonable suspicion or probable cause existed at the time a person is seized by the police, generally the police may consider that a person previously had been arrested for an illegal drug transaction or found in possession of illegal drugs regardless of whether the person was convicted or whether the evidence was suppressed. "Evidence establishing probable cause need not be evidence which would be admissible on the issue of guilt at the defendant's trial." Commonwealth v. Ortiz, 376 Mass. 349, 354 (1978).  See Commonwealth v. Freeman, 87 Mass. App. Ct. 448, 452 (2015).

Here, the interaction between a known drug dealer who had been seen reaching into a vehicle in which the sole occupant's behavior up to that point was consistent with that of persons who purchase drugs by means of "car meets," in a location where such transactions are known to occur, permitted an experienced narcotics investigator to infer that there had been an exchange involving drugs.  In Stewart, on the other hand, "the officer testified that the defendant and three companions huddled in a doorway, but his view was limited to their 'upper torso area,' and he did not testify to seeing the defendant make any hand movements suggesting an exchange or to seeing any object passing between the defendant and any of his companions."  Ibid. Similarly, in Commonwealth v. Levy, 459 Mass. 1010, 1011-1012 (2011), where the court concluded probable cause was lacking, police officers observed suspicious behavior involving the occupants of two vehicles, but did not observe the exchange of any items and did not recognize any of the individuals "as having a history with illegal drugs."  In Commonwealth v. Coronel, 70 Mass. App. Ct. 906 (2007), this court concluded that probable cause existed on the basis of an experienced police officer's following observations, in area known for drug activity.  The officer saw a female exit a vehicle to make a brief call on a public telephone, and shortly after her return to the vehicle, a second vehicle, being driven by the defendant,

approached, slowed down, and eventually stopped. Id. at 906-907. The codefendant, who was a passenger, got out of the female's vehicle; entered the second vehicle, where he remained for ten to fifteen seconds; and then stuffed something into his pocket as he exited that vehicle. Id. at 907. Because the officer in Coronel had previously arrested the defendant for trafficking in cocaine, the court determined that "it was a reasonable inference, and not a mere hunch as the motion judge suggested, that an exchange of contraband took place during the ten to fifteen second interval that [the codefendant] was in [the defendant's] car." Ibid.

In deciding Stewart, the Supreme Judicial Court did not abandon the traditional approach to the determination of probable cause first outlined in Brinegar, 338 U.S. at 175, which permits police officers to act on the basis of "factual and practical considerations of everyday life on which reasonable and prudent men [and women], not legal technicians, act." Although under Stewart, the factual circumstances known to the police officer must permit an inference that there was an exchange of an object in order to support probable cause that a street-level drug transaction took place, there are a myriad of factual scenarios in which such an inference is reasonable despite the absence of any direct observation of an exchange.

Finally, the defendant's reliance on Gomes is misplaced. There, at 4:00 A.M. in a neighborhood known for drug activity, an experienced narcotics investigator observed the defendant, who had been previously arrested for drug offenses, display something in his hand to another person and then swallow it. Gomes, 453 Mass. at 511. No exchange occurred between the two individuals. Ibid. However, the Supreme Judicial Court did not address whether the officer had probable cause to arrest the defendant. Instead, the court considered a different question, namely, whether a person detained for a threshold inquiry based on reasonable grounds to suspect that he was committing, had committed, or was about to commit a crime, namely the sale of drugs, could be subjected to a patfrisk in the absence of evidence that he was armed and dangerous. Id. at 510-514. The court concluded that the patfrisk was unlawful because "the degree of police intrusion was not proportionate to the articulable risk to officer safety." Id. at 513-514. In the present case, on the other hand, the facts relied upon by the Commonwealth to support its argument that Officer Holey had probable cause to arrest the defendant by the time he saw the money sticking out of the defendant's pocket are predictive of the inference that an exchange occurred as required by Stewart.[8]

---

[8] Because we conclude that Officer Holey had probable cause to arrest the defendant on July 5, we need not consider the

3.  <u>Ineffective assistance of counsel</u>.  The second question presented for our review is whether the defendant's trial counsel provided ineffective assistance in failing to cross-examine chemist Kimberly Dunlap about the weight of the drugs she analyzed.  In a supplemental argument pursuant to <u>Commonwealth</u> v. <u>Moffett</u>, 383 Mass. 201, 216-217 (1981), the defendant claims that his trial counsel provided ineffective assistance based on an alleged "discrepancy" between the recorded weight of narcotics recovered from the defendant and the weight of the complete package of materials brought to the chemist's laboratory and later introduced into evidence at trial.  Generally, we do not reach ineffectiveness claims when they are raised for the first time on direct appeal.  It is a "well-established principle that the preferred method for raising a claim of ineffective assistance of counsel is through a motion for a new trial."  <u>Commonwealth</u> v. <u>Zinser</u>, 446 Mass. 807, 810 (2006).  This case does not fit into the exception where a "claim of ineffective assistance may be resolved on direct appeal of the defendant's conviction when the factual basis of the claim appears indisputably on the trial record."  <u>Commonwealth</u> v. <u>Adamides</u>, 37 Mass. App. Ct. 339, 344 (1994).  We do not have an affidavit from the defendant's trial counsel, and

---

defendant's argument that the evidence seized as a result of his arrest on July 12 was the fruit of an unlawful search on July 5.

the Commonwealth does not agree with the factual underpinnings of the defendant's claim.[9]

Conclusion.  For the above reasons, the judge was correct in denying the defendant's pretrial motion to suppress evidence. And, on the record before us, there is no merit to the defendant's claim, raised for the first time on appeal, that his trial counsel was ineffective.

Judgments affirmed.

---

[9] The defendant also contends that trial counsel was ineffective because he did not call as witnesses the driver of the Ford Explorer and the officer who searched that driver (and found no drugs, only a crack pipe).  This argument is unavailing because there is no affidavit from the driver or other information that states what the driver would testify to, and the officer's testimony would have been cumulative of other evidence.