NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-933

COMMONWEALTH

vs.

JORGE COLON.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial in the Superior Court, the defendant, Jorge Colon, was convicted of possession of a single baggie of fentanyl that police found in his pants pocket.[1]  He appeals, arguing that the motion judge erred in denying the motion to suppress evidence.  We affirm.

Background.  We summarize the facts found by the motion judge, supplemented by our own review of the documentary evidence, including video recordings taken by surveillance

_____

[1] The jury convicted the defendant of that offense as a lesser included offense of possession of fentanyl with intent to distribute, G. L. c. 94C, § 32 (a).  As to drugs found in a trash can, the jury acquitted the defendant of trafficking in eighteen grams or more of fentanyl, G. L. c. 94C, § 32E (c), and possession of cocaine with intent to distribute, G. L. c. 94C, § 32A (a).

cameras at a nearby hospital and the officers' body cameras.[2]
See Commonwealth v. Rand, 487 Mass. 811, 814 (2021).

On the morning of May 3, 2022, Boston police officers
Jordan Aragones and Anthony Dowling, both armed and wearing
bulletproof vests identifying them as police, were on patrol in
an unmarked black sport utility vehicle (SUV). At about 11:30
A.M., they were near the corner of Massachusetts Avenue and
Albany Street, a block away from the intersection of
Massachusetts Avenue and Melnea Cass Boulevard. That area was
known to both officers for high occurrences of open drug use and
drug dealing, and the officers had conducted dozens of drug
arrests there, including for hand-to-hand drug transactions. On
a sidewalk next to a bus stop, in an alcove behind an electrical
box and a trash can, the officers saw a group of four or five
people huddled together, facing each other and with their backs
to the street. The officers suspected a drug transaction and
collectively decided to "see what was going on."

---

[2] In his brief the defendant has included excerpts from
trial exhibits altered with appellate counsel's own markings
describing what counsel contends the exhibits depict. Because
those alterations were not in the exhibits in the trial court,
their inclusion in the defendant's brief is not "supported by
appropriate citation," Mass. R. A. P. 20 (a) (1) (B) (i), as
appearing in 487 Mass. 1601 (2021), and we therefore disregard
those alterations and consider only the "exhibits on file."
Mass. R. A. P. 8 (a), as appearing in 481 Mass. 1611 (2019).

As the officers' SUV pulled up, the group dispersed.  One of the people in the group was the defendant.  As Officer Aragones got out of the SUV, the defendant, who had been walking in the same direction that the SUV had been traveling, immediately changed direction and began walking the opposite way.  The defendant tossed something into a trash can and dropped a packet of Newport cigarettes on the sidewalk.

At 11:32 A.M., Officer Aragones caught up with the defendant, tapped him lightly on the shoulder, and spoke to him.[3] Officer Aragones recognized the defendant as having previously been arrested for drug charges on the same block, and told Officer Dowling that the defendant had been arrested in the area before.[4]  While Officer Dowling engaged the defendant in conversation, Officer Aragones retraced the defendant's steps looking for the Newport cigarette packet but did not find it.[5]

---

[3] The motion judge found, "No evidence was produced as to the content of Officer Aragones's statement to [the defendant]." In fact, the transcript shows that when asked what he said to the defendant, Officer Aragones testified, "I wanted to talk to him."  We do not determine the credibility of Officer Aragones's testimony, because the content of his question is not dispositive to our holding.

[4] There was no testimony as to whether Officer Aragones recognized the defendant before or after he touched the defendant's shoulder.

[5] The surveillance video depicted that immediately after the defendant walked by a man picked up something from the ground and then lit a cigarette.

3

On top of the trash in the trash can Officer Aragones found fifteen baggies containing brown powder and three baggies containing white powder. Police arrested the defendant, and on his person found eight empty plastic bags in his backpack and $350 in his pants pocket. At booking, police found in the defendant's front right pants pocket a baggie of brown powder, later determined to contain fentanyl.

The defendant moved to suppress the baggie of fentanyl found in his pocket, as well as the other items found on his person and in the trash can. At a hearing on the motion, defense counsel argued that Officer Aragones's touching the defendant's shoulder constituted a stop, but at that point police did not have reasonable suspicion to stop him. After questioning whether a touch on the shoulder constituted a stop, the motion judge denied the motion to suppress, concluding that once police found the drugs in the trash can, they had probable cause to arrest the defendant and properly searched him incident to arrest.

At a trial before a different judge, the jury convicted the defendant of possession of the fentanyl found in his pocket and acquitted him of charges pertaining to the drugs found in the trash can.

Discussion. Whether touching constituted a seizure. The defendant argues that the motion judge should have suppressed

the baggie of fentanyl found in the defendant's pocket. He contends that police seized him at the moment when Officer Aragones touched his shoulder, and at that point the police did not have probable cause to arrest him or even reasonable suspicion to stop him. We conclude that police had reasonable suspicion to stop the defendant when Officer Aragones touched him, which ripened to probable cause to arrest him once Officer Aragones found the drugs in the trash can.

In reviewing a motion to suppress, "we accept the judge's subsidiary findings of fact absent clear error," but "review independently the application of constitutional principles to the facts found." Commonwealth v. Warren, 475 Mass. 530, 534 (2016), quoting Commonwealth v. Wilson, 441 Mass. 390, 393 (2004). To determine whether a seizure was justified, "we ask whether the stop was based on an officer's reasonable suspicion that the person was committing, had committed, or was about to commit a crime." Warren, supra, quoting Commonwealth v. Martin, 467 Mass. 291, 303 (2014). The reasonable suspicion must be grounded in "specific and articulable facts, and reasonable inferences therefrom, in light of the officer's experience" (quotation omitted). Commonwealth v. Privette, 491 Mass. 501, 507 (2023).

Under the United States Constitution, a seizure based on physical force "requires the use of force with intent to

5

restrain," and "[a] tap on the shoulder to get one's attention will rarely exhibit such an intent." Torres v. Madrid, 592 U.S. 306, 317 (2021). However, in Massachusetts, art. 14 "provides more substantive protection to a person than does the Fourth Amendment in defining the moment at which a person[] . . . may be said to have been 'seized.'" Commonwealth v. Stoute, 422 Mass. 782, 785-786 (1996). Under art. 14, a person is "seized" if "an officer has, through words or conduct, objectively communicated that the officer would use his or her police power to coerce that person to stay." Commonwealth v. Matta, 483 Mass. 357, 362 (2019). "[T]he coercion must be objectively communicated through the officer's words and actions for there to be a seizure." Id. at 364.

The motion judge found that "Officer Aragones touched [the defendant] lightly to get his attention." The surveillance video depicts Officer Aragones coming up behind the defendant and touching his right shoulder, at which point the defendant turned to face the officer and stopped walking. The defendant argues that Officer Aragones's touching his shoulder constituted a seizure.

In denying the motion to suppress by concluding that Officer Aragones's subsequent discovery of the drugs in the trash can gave police probable cause to arrest the defendant, the judge implicitly rejected the defendant's argument that

6

Officer Aragones's touching the defendant's shoulder constituted a seizure. We doubt that the officer's light touch on the defendant's shoulder from behind constituted an objective communication that the officer would use his police power to coerce the defendant to stay.[6] See Matta, 483 Mass. at 362. Officer Aragones did not obstruct the defendant's path or impede his progress. See Commonwealth v. Daveiga, 489 Mass. 342, 347 (2022), citing Commonwealth v. Thompson, 427 Mass. 729, 733, cert. denied, 525 U.S. 1008 (1998). The presence of the two officers was not "overwhelming." Commonwealth v. Gomes, 453 Mass. 506, 510 (2009) (presence of three police officers did not constitute seizure). Indeed, almost immediately after touching the defendant's shoulder, Officer Aragones walked away. Until the defendant turned and saw that the person who had touched his shoulder was a police officer, the touch could not be said to have been coercive within the meaning of Matta.

Reasonable suspicion at the moment of touching. We need not definitively decide whether any touch by a police officer would constitute a seizure, because we conclude that, at the moment that Officer Aragones touched the defendant's shoulder,

---

[6] If any touching by a police officer constituted a seizure, that would presumably encompass such everyday interactions as an officer's jostling against someone in a crowd, greeting someone with a handshake, or tapping someone to alert them to having dropped an item.

7

police had reasonable suspicion that the defendant had committed, was committing, or was about to commit the crime of drug possession or distribution.

In order to develop reasonable suspicion that a drug transaction occurred, police need not see an exchange of drugs or cash. See Commonwealth v. Castillo-Martinez, 104 Mass. App. Ct. 22, 24 (2024), quoting Commonwealth v. Kearse, 97 Mass. App. Ct. 297, 302 (2020). Factors that may support probable cause in the context of a street-level drug transaction include: "(1) the observation of an unusual transaction; (2) furtive actions by the participants; (3) the event occurs in a location where the police know drug transactions are common; and (4) an experienced officer on the scene regards the event as consistent with a street-level drug transaction." Castillo-Martinez, supra at 25, quoting Commonwealth v. Santa Maria, 97 Mass. App. Ct. 490, 494 (2020). Each of those factors was present here, and thus Officer Aragones had at least reasonable suspicion to stop the defendant.[7]

Officers Aragones and Dowling were patrolling an area they knew to have extremely high drug activity. In that area, both officers had previously made dozens of arrests for both drug

---

[7] We need not reach the question whether Officer Aragones would have had probable cause to arrest the defendant at the moment of the touching.

distribution and possession, had seen people ingesting drugs, and had seen hand-to-hand drug transactions.  The officers' association of that area with high levels of drug activity had a "direct connection with the specific location and activity being investigated" (quotation omitted).  Commonwealth v. Evelyn, 485 Mass. 691, 709 (2020).  See Commonwealth v. Grandison, 433 Mass. 135, 140 (2001) (among other factors, the fact that defendant was present in "area with a high incidence of illegal drug activity" supported reasonable suspicion that defendant "was carrying illegal drugs").

Officer Aragones saw an unusual transaction.  The defendant was one of a group of people in a recessed area of the sidewalk behind an electrical box "huddled" together with their backs to the street.  See Commonwealth v. Stewart, 469 Mass. 257, 261 (2014) (reasonable suspicion based in part on officer observing people "huddle" in a street "often used by drug users").  Based on Officer Aragones's experience with drug arrests in the area, he reasonably suspected that the group was engaging in one or more hand-to-hand drug transactions.  See id. (officer's experience in drug investigations added to reasonable suspicion).

The defendant's furtive behavior in response to the officers added to reasonable suspicion.[8]  As the police SUV pulled over, the group dispersed.  The defendant had been walking in the same direction that the police SUV had been traveling, but when Officer Aragones got out of the SUV, the defendant immediately reversed direction.  See Commonwealth v. Karen K., 491 Mass. 165, 175, 179-180 (2023) (changing direction to avoid police added to reasonable suspicion).  See also Commonwealth v. Robinson-Van Rader, 492 Mass. 1, 11 (2023) (repeatedly glancing over shoulder toward police station added to reasonable suspicion).  While walking away from Officer Aragones, the defendant tossed something into the trash can and dropped the packet of cigarettes.  Cf. Grandison, 433 Mass. at 140 (defendant's spitting something out of mouth while walking away from police added to reasonable suspicion).

Moreover, by the time the defendant turned in response to Officer Aragones's touch, see note 4, supra, Officer Aragones recognized the defendant as someone who had been arrested previously for drug charges on the same block.  That added another quantum of proof to the officer's reasonable suspicion.

---

[8] As for the defendant's argument that the motion judge erred in crediting the testimony of Officer Aragones describing what the defendant did, the short answer is that we defer to the motion judge's credibility finding based on the officer's testimony.  See Commonwealth v. Tremblay, 480 Mass. 645, 655 (2018).

10

See Stewart, 469 Mass. at 261 (officer's knowledge of defendant's previous drug distribution arrest added to reasonable suspicion).

While none of the defendant's actions in isolation would have established reasonable suspicion, "a combination of factors that are each innocent of themselves may, when taken together, amount to the requisite reasonable belief that a person has, is, or will commit a particular crime." Matta, 483 Mass. at 365, quoting Commonwealth v. Meneus, 476 Mass. 231, 236 (2017). Based on the totality of the circumstances in this case, at the moment when Officer Aragones lightly touched the defendant's shoulder, police had reasonable suspicion that the defendant had committed or was committing the crime of drug possession or distribution. Once Officer Aragones found baggies of powder in the trash can, police had probable cause to arrest the defendant, and during the search at booking found the baggie of fentanyl in his pants pocket.

Judgment affirmed.

By the Court (Massing, Singh & Grant, JJ.[9]),

Assistant Clerk

Entered:  May 22, 2024.

---

[9] The panelists are listed in order of seniority.